United States District Court
Southern District of Texas

**ENTERED**

January 18, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. Bank National Association, as Trustee for CSMC Mortgage-Backed Trust 2007-3, and PHH Mortgage Corporation, Individually and as Successor-in-Interest to Ocwen Loan Servicing, LLC | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.: 4:19-cv-2402 |
| Josef M. Lamell aka J.M. Arpad Lamell, | § § § | |
| *Defendant*. | § § | |

**MEMORANDUM & RECOMMENDATION**

This matter is before the Court on U.S. Bank National Association's ("USBNA") and PHH Mortgage Corporations' ("PHH") Motion to Dismiss Lamell's Original Answer (Dkt. 43), Motion to Strike Defense of Fraud (Dkt. 45), and Motion to Dismiss Lamell's Amended Counterclaims (Dkt. 49). Having considered the pleadings, the parties' filings and the law, the Court **RECOMMENDS** the Motion to Dismiss Lamell's Amended Counterclaims (Dkt. 49) be **GRANTED** and the Motion to Dismiss Lamell's Original Answer (Dkt. 43) and Motion to Strike Defense of Fraud (Dkt. 45) be dismissed as **MOOT**.[1]

---

[1] The Motion to Dismiss Lamell's Original Answer (Dkt. 43) was mooted by Lamell's Amended Answer and Counterclaims (Dkt. 46) as was the Motion to Strike Defense of Fraud (Dkt. 45).

## I. BACKGROUND

This case involves an ongoing dispute regarding the potential foreclosure of a property located at 5131 Glenmeadow Drive (the "Property") which has spanned more than nine years and two lawsuits.  Dkt. 18 ¶ 4.  In connection with the purchase of the Property in September 2006, Lamell executed a Note and Deed of Trust granting a security interest in the Property.  In February 2010, Lamell filed suit in state court against the Harris County Appraisal District, its Review Board, and the Harris County Tax Assessor alleging fraud related to tax assessments on the Property.  In May 2010, as the result of an attempted foreclosure proceeding by the mortgage servicer at the time, CIT Bank, NA ("CIT"), Lamell added CIT as a defendant in the state court suit. [2]  In April 2019, Lamell filed his Third Supplemental Petition in the state court suit in which he argued the statute of limitations barred any current or future foreclosure of the Property.  Dkt. 49-2 ¶ 8. Shortly after the state court granted Lamell leave to file his Third Supplemental Petition, CIT and Lamell settled the state court action and executed a settlement agreement (the "Settlement Agreement").  Dkt. 49-1 at 1-10.  On May 16, 2019 the state court signed an Agreed Order Dismissing All Claims with Prejudice (the "Order of Dismissal").  Dkt. 49-3 at 1-2.  The Order of Dismissal states that it "disposes of all parties and all claims and is therefore final."  *Id.* at 2.

USBNA and PHH filed this suit in July 2019 and seek, among other relief, a declaration that the statute of limitations does not bar foreclosure of the property.  Dkt. 18 ¶ 29.  USBNA and PHH also seek a declaration that they are entitled to equitable and contractual subrogation as a basis for foreclosure.  *Id.* ¶¶ 46-52.  Lamell argues that foreclosure and collection are barred by the statute of limitations and that his settlement with CIT was induced by fraud.  Dkt. 46 ¶¶ 149-52, 155.  He has brought counterclaims against PHH and USBNA for common law fraud; statutory

---

[2] USBNA is the current holder of the Note and beneficiary of the Deed of Trust and PHH is the current servicer of the Loan.

2

fraud; fraud in the inducement; fraud by misrepresentation, omission, and non-disclosure; violations of the Texas Debt Collection Practices Act ("TDCPA"); quiet title; and several claims for declaratory judgment.  *Id.* ¶¶ 149-55.  PHH and USBNA filed a timely Motion to Dismiss Lamell's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 49.  Lamell filed a Response (Dkt. 50) and Surreply (Dkt. 59), both of which were considered by the Court in resolving the Motion to Dismiss.

## II.  MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the Court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the Court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.  If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment.  *See* FED. R. CIV. P. 12(d).  However, the Court may take judicial notice of public documents, and may also consider documents attached to a motion to dismiss or response so long as they are referred to in

the complaint and central to the plaintiff's claims. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

Lamell did not attach any documents to his Amended Answer and Counterclaims, but he has attached to his Response to the Motion to Dismiss an affidavit which includes copies of multiple filings from the proceedings in state court. Dkt. 50-1 at 2-59. Lamell's affidavit is beyond the scope of evidence that can be properly considered under Rule 12(b)(6) and, therefore, will be disregarded. *See Jaber v. Metro. Transit Auth. of Harris Cty., Tex.*, No. 4:14-CV-201, 2014 WL 4102120, at *3 (S.D. Tex. Aug. 14, 2014) (disregarding affidavit evidence on a Rule 12(b)(6) motion). However, the Court will consider the documents filed in state court and attached to the affidavit because they are public records, which may be considered on a Rule 12(b)(6) motion. *See JetPay ISO Servs., LLC v. Integrated Merch. All., Inc.*, No. 3:14-CV-3823-G, 2015 WL 13118144, at *2 (N.D. Tex. Mar. 16, 2015) (citing *Norris*, 500 F.3d at 461 n.9) (explaining public court filings are public records and may be considered in resolving a Rule 12(b)(6) motion).

PHH and USBNA have attached to their Motion to Dismiss a copy of Lamell's Third Supplemental Petition (Dkt. 49-2), the Settlement Agreement (Dkt. 49-1), and the Order of Dismissal (Dkt. 49-3) from the state suit. They attached to their Reply a copy of Lamell's Response opposing CIT's Motion to Release IOLTA Funds filed in the state court case. Dkt. 55-1. The Court may consider these attachments as part of the pleadings because they are referred to in Lamell's Amended Answer and Counterclaims, are central to Lamell's claims, and are matters of public record. *See Blakely v. Andrade*, 360 F. Supp. 3d 453, 472 (N.D. Tex. 2019) (explaining the court may consider (1) attachments to a motion to dismiss or response if they are referred to in the complaint and central to the plaintiff's claims and (2) matters of public record).

### III. ANALYSIS

Lamell seeks quiet title and declarations that (1) the statute of limitations bars PHH's and USBNA's suit for enforcement of the Deed of Trust; (2) the enforcement and foreclosure provisions of the Deed of Trust and lien are void; (3) PHH and USBNA have no authority to foreclose on the Property or bring a suit to collect on the Note; (4) USBNA and PHH are barred from bringing suit to enforce collection; (5) the endorsements on the Note are not genuine; and (6) USBNA is not owner of the Note. Dkt. 46 ¶¶ 154-55.

Lamell brings counterclaims against USBNA and PHH for common law fraud, statutory fraud, fraud in the inducement, and fraud by misrepresentation, omission, and non-disclosure. *Id*. ¶¶ 149-52. Although not specified as such in Lamell's pleadings, the Court will consider these claims to allege affirmative claims for fraud and also to allege a basis for avoiding the release and disclaimer of reliance contained in the Settlement Agreement.

Lamell also brings claims against USBNA and PHH for violations of the Texas Debt Collection Practices Act ("TDCPA"). *Id*. ¶ 153. Specifically, Lamell argues PHH and USBNA violated § 392.304(a)(8) of the TDCPA based on the following alleged conduct: (1) representing that the June 4, 2010 acceleration of the Note had not been abandoned and the statute of limitations did not bar foreclosure; (2) representing that Lamell released his statute of limitations defense; and (3) representing Lamell's statute of limitations defense is barred by res judicata. *Id*. Lamell argues they violated § 394.304(a)(19) of the TDCPA by (1) fraudulently inducing Lamell to enter into the Settlement Agreement and (2) fabricating the chain of title on the loan. *Id*.

USBNA and PHH have moved to dismiss each of these counterclaims under Rule 12(b)(6). As set forth below, the Court concludes that Lamell's counterclaims fail to state a claim for relief and should be dismissed with prejudice.

**A.  Lamell's claims for quiet title and declaratory judgment are barred by res judicata.**

The doctrine of res judicata precludes the re-litigation of claims that have been finally adjudicated or should have been raised in a prior suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *Citizens Ins. Co of Am. v. Daccach*, 217 S.W. 3d 430, 448 (Tex. 2007) ("Generally, res judicata prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit.").  "The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Daccach*, 217 S.W.3d at 449.  Whether a prior judgment has res judicata effect on a later claim is a question of law for the Court. *Murphy v. HSBC Bank USA*, Civil Action No. H-12-3278, 2017 WL 393595, at *4 (S.D. Tex. Jan. 30, 2017) (citing *Daccach*, 217 S.W. 3d at 449).  "A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Van Duzer v. U.S. Bank Natl. Assoc.*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014), aff'd, 582 F. App'x. 279 (5th Cir. 2014) (quoting *E.D. Sys. Cor. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982)).  Under Texas law, "[f]or res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Daccach*, 217 S.W. 3d at 449 (citations omitted).  As discussed below, the Court concludes res judicata bars Lamell's claims for quiet title and declaratory judgment.

**1.  A court of competent jurisdiction rendered a final judgment on the merits in the previous action.**

Lamell does not dispute that the 127th District Court of Harris County, Texas is a court of competent jurisdiction and this Court finds it had jurisdiction to hear the claims in the prior suit and issue a final judgment on the merits.

The Judge of the 127th District Court signed the Order of Dismissal on May 16, 2019.  Dkt. 32-2 at 137-38.[3]  The Order of Dismissal states that it "disposes of all parties and all claims and is therefore final." *Id*. at 138.  "An agreed judgment of dismissal in settlement of a controversy is a judgment on the merits" for res judicata.  *N.Y. Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 968 (S.D. Tex. 2014) (quoting *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App. 2000)).

On July 11, 2019, more than thirty days after signing the Order of Dismissal, the state trial court signed an order vacating the Order of Dismissal ("the Vacating Order").  Dkt. 32-2 at 140.  CIT filed a writ of mandamus, arguing that the trial court's plenary jurisdiction over the case expired before the Vacating Order was entered.  *Id*. at 156-61.  The Court of Appeals ruled that the trial court's plenary jurisdiction had expired prior to the entry of the Vacating Order and, therefore, it was void for lack of jurisdiction.  *Id*.  The Court of Appeals granted mandamus relief compelling the trial court judge to vacate the Vacating Order and the trial court judge did so on November 5, 2020.  Dkt. 72-1 at 2-3.  Thus, the May 16, 2019 Order of Dismissal remains a final order in the state case and constitutes a final judgment on the merits.  *See N.Y. Pizzeria, Inc.* 53 F. Supp. 3d at 968.

---

[3] PHH and USBNA attached the Vacating Order and the Court of Appeals opinion to their Motion for Summary Judgment.  They attached the Order vacating the July 11, 2019 Vacating Order their Supplement to the Motion for Summary Judgment.  Dkt. 72-1 at 2-3.  The Court will consider these documents filed in state court because they are public records, which may be considered on a Rule 12(b)(6) motion.  *See JetPay ISO Servs., LLC v. Integrated Merch. All., Inc.*, No. 3:14-CV-3823-G, 2015 WL 13118144, at *2 (N.D. Tex. Mar. 16, 2015) (citing *Norris*, 500 F.3d at 461 n.9) (explaining public court filings are documents of public record and may be considered in resolving a Rule 12(b)(6) motion).

### 2. The parties are in privity.

"Res judicata applies when a party in the second suit is in privity with a party in the first suit." *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014) (citations omitted) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). "Privity connotes those who are so connected with a party to the judgment in the law such that the party to the judgment represented the same legal right." *Id.* (citations omitted). A non-party to a prior judgment can be in privity with a party to the judgment if (1) its interests are represented by a party to the prior action or (2) it is a successor-in-interest deriving its claim through a party to the prior action. *Id.* at 234-35. Lamell appears to argue that PHH and USBNA cannot establish privity absent common corporate ownership. Dkt. 50 at ¶ 32. However, in this case "it is not the commonality of corporate ownership that establishes privity, but rather it is the identity of interest held by [CIT, PHH as successive mortgage servicer, and USBNA as the mortgagee]." *Samuel*, 434 S.W.3d at 235 (citing *Amstadt*, 919 S.W.2d 644, 653 (Tex. 1996)).

*USBNA is in privity with CIT.* The relationship between a mortgagee/mortgage holder and mortgage servicer establishes privity needed for res judicata. *Rivas v. U.S. Bank Nat'l Ass'n as Trustee for Mastr Asset Backed Securities Tr. 2007-HE-2*, No. CV H-14-3246, 2015 WL 13743456, at *2 (S.D. Tex. June 24, 2015), *adopted by* 2015 WL 8215137 (S.D. Tex. Dec. 8, 2015); *Castillo v. Select Portfolio Servicing, LLC*, Civil Action No. DR-16-CV-044-AM/CW, 2017 WL 2999705, *4 (W.D. Tex. Mar. 21, 2007) ("Courts uniformly have held that mortgage assignees and servicers are sufficiently in privity [for res judicata purposes]."); *Porter v. Cenlar FSB*, No. 05-14-00663-CV, 2016 WL 1019359, *5 (Tex. App.—Dallas, 2016) (finding mortgagee, mortgage servicer, and their counsel all shared as "common identity of interests" which established privity for res judicata purposes); *Witherspoon v. Specialized Loan Servicing, LLC*, Civil Action

No. H-17-2675, 2018 WL 2985893, at *7 (S.D. Tex. Apr. 12, 2018) (finding loan servicer and mortgagee in privity for purposes of res judicata).

Lamell's Amended Answer and Counterclaims include factual allegations that CIT acted as mortgage servicer for USBNA until October 16, 2013, when it transferred servicing of the mortgage to Ocwen.  Dkt. 46 ¶ 89-90.  Therefore, as mortgage holder/mortgage servicer, privity exists between USBNA and CIT and USBNA is entitled to raise the res judicata effect of the state court judgment dismissing Lamell's claims with prejudice.  *See Witherspoon*, 2018 WL 2985893, at *3 (finding privity between a note holder and loan servicer).

*PHH is in privity with CIT.*  A party can be in privity for res judicata purposes if it is a successor in interest to a party in the prior action.  *Samuel*, 434 S.W.3d at 235 (citing *Amstadt*, 919 S.W.2d at 653).  PHH is a successor to the interests of CIT in the prior state court suit.  Lamell alleges that the right to service the mortgage was transferred from CIT to Ocwen.  Dkt. 46 ¶ 89. He also alleges that Ocwen and PHH "are one and the same party now known as PHH by virtue of their business combination through a merger or acquisition of OCWEN by PHH" and are "interchangeable as to being the same party in this case."  *Id.* ¶ 79 n.2.  As a successive servicer to CIT, Ocwen/PHH is in privity with CIT and entitled to assert the res judicata effect of the prior state court judgment dismissing all claims with prejudice.  *See Rivas*, 2015 WL 13743456, at *2 (finding the "successor status establishes the requisite privity" between a loan servicer and its successor loan servicer).

### 3.  Both actions involve the same nucleus of operative facts.

The Texas Supreme Court has explained that "a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose."  *Grady v. Nationstar Mortg., LLC,* No. 02-19-00006-CV, 2020 WL 5242418, at *7 (Tex.

App.—Fort Worth Sep. 3, 2020) (citing *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992)).  To determine whether an entire lawsuit or a particular claim is barred by res judicata, Texas courts follow the transactional approach, which means the Court examines the factual bases, not the legal theories presented in the two cases.  *Samuel*, 434 S.W.3d at 234.  The main concern of the transactional approach is whether the cases share the same nucleus of operative facts.  *Id.*

Lamell seeks declaratory judgments that (1) the statutes of limitation bar PHH's and USBNA's suit to enforce the Deed of Trust; (2) the enforcement and foreclosure provisions of the Deed of Trust and lien are void; (3) PHH and USBNA have no authority to foreclose or bring a suit to claim enforcement collection on the Note; (4) USBNA and PHH are barred from bringing a suit to enforce collection; (5) the endorsements on the Note are not genuine; and (6) USBNA is not the owner of the Note.  Dkt. 46 ¶ 155.  He also counterclaims for quiet title, claiming his valid interest in the Property is being encumbered by invalid claims of PHH and USBNA.  *Id*. ¶ 154.

Lamell's counterclaims in this suit are based on the same nucleus of operative facts that gave rise to the state court suit and Lamell's allegations in the Third Supplemental Petition.  During the state court proceedings, Lamell argued that CIT initiated foreclosure on April 8, 2010 and accelerated the loan on June 4, 2010 and never abandoned that acceleration.  Dkt. 49-2 ¶¶ 2-3.  According to Lamell's state court pleadings, the acceleration of the loan and the failure to abandon the acceleration resulted in the expiration of the statute of limitations and precluded any further enforcement of the Note provisions and any foreclosure action "by CIT or its successors or assigns . . . ."  *Id*. ¶¶ 7-8.  Based on these facts, Lamell sought in the state court suit "specific declarations that limitations have gone beyond statutory limits as to each of the foreclosure or collection actions that had formerly been available to CIT."  *Id*. ¶ 10.  Lamell also sought in the state court suit a

judgment barring "CIT, whether directly or through its successors or assigns" from bringing any suit or claim to enforce collection on the note; a declaration that the enforcement provisions of the Deed of Trust and lien are void due to the expiration of the statute of limitations; and that CIT has no authority to foreclose on the property or bring a claim for collection on the Note.  *Id*. at 4-5.

Lamell alleges those very same facts in this suit as the basis for his damages[4] and his counterclaims.  He alleges that PHH's and USBNA's rights to foreclose are barred by the statute of limitations because CIT accelerated the loan on June 4, 2010 and the acceleration has never been abandoned.  Dkt. 46 ¶ 66, 153-155.  Further, he seeks declarations that any collection or foreclosure is time-barred and that the Deed of Trust is void as time-barred.  *Id*. ¶ 155.  He alleges here, as he did in state court, that the signatures on the notes are not genuine.  *Id*. ¶¶ 81-88, 155. All of Lamell's allegations and counterclaims in this case, save the allegations of fraud regarding the Settlement Agreement, arise from the same nucleus of operative facts described in his state court Third Supplement to Petition—the facts surrounding his purchase of the Property, the assignments or transfers of the Note and Deed of Trust, and attempts to accelerate the note and foreclose on the Property.

In summary, a final judgment dismisses with prejudice the state court claims against CIT, CIT is in privity with USBNA and PHH, and the quiet title and declaratory judgment claims in this case are either identical to or arise from the same nucleus of operative facts at issue in the state case.  Therefore, the quiet title and declaratory judgment claims in this case are barred by res judicata and should be dismissed.[5]  *See Tu Nguyen v. Bank of America, N.A.*, 538 F. App'x 325,

---

[4] Lamell's pleading identifies the value of the relinquishment of statute of limitations defense as his damages in this suit. Dkt. 46 ¶ 146.

[5] Lamell argues briefly in his Response to the Motion to Dismiss that, to the extent the doctrine of res judicata bars his claims, it would also bar PHH's and USBNA's claims. Dkt. 50 ¶ 8.  However, foreclosure claims are not compulsory counterclaims and, therefore, PHH's and USBNA's claims in this suit are not barred by res judicata. *See Casterline v. OneWest Bank, FSB*, Number 13-17-00118-CV, 2018 WL 1755821, at *5 (Tex. App.—Corpus Christi-Edinburg, Apr. 12, 2018) (discussing *Kaspar v. Keller*, 466 S.W.2d 326, 327-29 (Tex. Civ. App.—Waco 1971)).

328 (5th Cir. 2013) (holding res judicata barred quiet title claim where the plaintiff did not assert a claim for quiet title in the original foreclosure action).

**B. Lamell has failed to plead facts that plausibly state a counterclaim or defense against USBNA or PHH for fraud, fraud in the inducement, or fraud by omission.**

PHH and USBNA have moved to dismiss Lamell's counterclaims for common law fraud; statutory fraud; fraud in the inducement; and fraud by misrepresentation, omission, and non-disclosure.  In addition to moving to dismiss Lamell's fraud counterclaims, PHH and USBNA filed a Motion to Strike Defense of Fraud.  Dkt. 45.  The Motion to Strike Defense of Fraud was rendered moot by Lamell's filing of his Amended Answer and Counterclaim.  Dkt. 46.  However, the Court may consider the basis for the Motion to Strike and the sufficiency of Lamell's defensive claim of fraud, on its own initiative.  *See Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007) (quotations omitted).  Usually, a district court should not dismiss claims *sua sponte* without prior notice and an opportunity to respond.  *Id*. (discussing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)).  However, Lamell filed his Amended Answer and Counterclaim in response to PHH's and USBNA's Motion to Strike Defense of Fraud, and, therefore, has already had an opportunity to amend the fraud defense.  In addition, granting leave to amend a complaint is not required where amendment would be futile.  *Mattes v. Carvajal*, No. 3:20-cv-1917-B-BN, 2020 WL 6586713, at *3 (N.D. Tex. Oct. 2, 2020) (quoting *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016); *Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015)) ("[L]eave to amend is not required where an amendment would be futile, . . . or where a plaintiff has already amended his claims[.]").  As set forth below, even if Lamell were afforded yet another opportunity to amend, the fraud counterclaims and fraud defense would still fail as a matter of law.

**1. Lamell has failed to plausibly allege a claim for fraud against USBNA or PHH.**

Each of Lamell's various fraud claims requires all the elements of common law fraud.[6]  To state a claim for common law fraud, Lamell must plausibly allege USBNA or PHH (1) made a material representation; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party should act upon it; (5) Lamell acted in reliance on the representation; and (6) Lamell thereby suffered injury.[7]  *See Mikob Prop., Inc. v. Joachim*, 468 S.W.3d 587, 598 (Tex. App. 2015) (citations omitted).

> *a.  Lamell has failed to plausibly allege any material misrepresentation by PHH or USBNA.*

Lamell has failed to allege a single material representation made by USBNA or PHH. Instead, he alleges that PHH and USBNA "were able to induce and trick him from behind the scenes into signing a Settlement Agreement that he was falsely led to believe would release ONLY his claims against CIT."  Dkt. 46 ¶¶ 141, 144 ("[PHH's and USBNA's] background involvement and CIT's continuing representation of their interests . . . set the stage and provide factual context for the actions that took place during the settlement and dismissal phase of the [state] case upon

---

[6] A claim for fraud in the inducement requires all the elements of common law fraud and the added element that the fraud related to an agreement between the parties. *Johnson v. World Alliance Financial Corp.*, 830 F.3d 192, 198 (5th Cir. 2016).  A claim for statutory fraud in a real estate transaction requires the same elements as common law fraud with the exception that a plaintiff need not show the defendant had knowledge the misrepresentation was false. *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 963 (Tex. Ct. App. 2013) (citing TEX. BUS. & COM. CODE. § 27.01(a)).  A claim for fraud by omission requires the same elements as common law fraud, with the exception that the misrepresentation element can be proven by an omission of a material fact in light of a duty to disclose.  *Smith v. BCE, Inc.*, 225 F. App'x 212, 218 (5th Cir. 2007).

[7] The only injury Lamell claims to have suffered in reliance on PHH's and USBNA's representations is "[t]he value of the loss, release, waiver, or relinquishment of an otherwise well-founded statute-of-limitations-based voiding of the Deed of Trust lien against his property, that but for [USBNA's and PHH's] wrongful actions, would have resulted in the voiding of that Deed of Trust."  Dkt. 46 ¶ 146.  In addition, his fraud defense consists of an attempt to avoid the provisions of the Settlement Agreement based on his claim that he was induced by fraud into signing it.  Therefore, the only misrepresentations *material* to his fraud counterclaims or defense are those on which he claims to have relied when entering into the Settlement Agreement.  *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) ("Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.").

which Lamell's counterclaims against [them] are mainly based."). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Lamell has failed to plead facts which allow the Court to draw the reasonable inference that USBNA and PHH can be held responsible for statements made by CIT or its counsel. While Lamell has alleged that USBNA and PHH were acting behind the scenes to cause CIT and its counsel to make the alleged false representations, his allegations do not state a plausible claim for relief. Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 679-80. Lamell has failed to plead facts demonstrating a material misrepresentation by USBNA or PHH, a required element of each of his fraud counterclaims against them.

### b. As a matter of law, Lamell cannot show the required element of justifiable reliance.

In order to sufficiently plead any of his fraud or fraud in the inducement counterclaims, Lamell must show that his reliance on a material misrepresentation by PHH and USBNA was actual and justifiable. *See Mikob Prop.*, 468 S.W.3d at 598 (citations omitted) ("Fraud requires a showing of actual and justifiable reliance."). Lamell cannot demonstrate justifiable reliance because it is a "well-settled rule" that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting. *Valls v. Johnson & Fairless, LLP*, 314 S.W.3d 624, 635 (Tex. App.—Houston [14th Dist.] 2010) (citations omitted). Texas courts have "repeatedly held a party may not justifiably rely on statements made by opposing counsel during settlement negotiations." *Id*. (citations omitted). Lamell's own allegations demonstrate that the settlement negotiations were adversarial and intended to end litigation that had continued for years. For example, Lamell alleges that he and counsel for CIT discussed proposed edits via phone and email

over the course of two days before he signed the Settlement Agreement.  Dkt. 46 ¶ 124.  He further

alleges that counsel for CIT rejected his request for specific language excluding USBNA and PHH

from the definition of "CIT Released Parties."  *Id.* ¶ 125.  Based on Lamell's own recitation of the

facts, the statements he allegedly relied on to his detriment were statements by opposing counsel

in an adversarial setting.  As a matter of law, Lamell cannot demonstrate his reliance on opposing

counsel's statements was justified.

In addition, a disclaimer of reliance may conclusively negate the element of reliance where

"the parties' intent is clear and specific . . . ."  *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56

(Tex. 2008).  The Settlement Agreement signed by Lamell contains such a clear disclaimer of

reliance:

### VII.  REPRESENTATION OF COMPREHENSION OF DOCUMENT

> 7.1 In entering into this Settlement Agreement, [Lamell] represents that he has had
> the opportunity to obtain and to rely on the legal advice of an attorney of his own
> choice, and that he fully understands the terms of this Settlement Agreement and
> that he voluntarily accepts such terms.  [Lamell] further represents that he has not
> relied upon any representations by [CIT] regarding this Settlement Agreement and
> that he has not been coerced or induced into execution of this Settlement Agreement
> as a result of any inducement to do so, other than pursuant to the terms and
> considerations set forth in this Settlement Agreement.

Dkt. 49-1 at 6 (emphasis in original).[8]  If effective, this disclaimer of reliance precludes Lamell's

justifiable reliance on any representations alleged to have been made by CIT.  *See Forest Oil Corp.*,

268 S.W.3d at 57 (finding binding waiver of reliance barred plaintiff's fraud claims). "[W]hen

knowledgeable parties expressly discuss material issues during contract negotiations but

nevertheless elect to include waiver-of-reliance and release-of-claims provisions, the Court will

generally uphold the contract" unless the disclaimer lacks "the requisite clear and unequivocal

expression of intent necessary to disclaim reliance . . . ."  *Id.* at 58, 60 (citations omitted).

---

[8] The Settlement Agreement also contains a merger clause disclaiming any other oral or written agreement.  *Id.* at 5.

The question of whether the disclaimer of reliance is binding may be resolved by the court as a matter of law.  *See Mae v. U.S. Prop. Solutions, LLC,* Civil Action No. H-09-3588, 2009 WL 1968330, at *4 (S.D. Tex. July 6, 2009) (considering at motion to dismiss stage whether disclaimer of reliance barred fraud claims as a matter of law); *Fair Isaac Corp. v. Texas Mut. Ins. Co.*, No. Civil Action No. H-05-3007, 2006 WL 2022894, at *3 (S.D. Tex. July 17, 2006) (finding a disclaimer of reliance binding as a matter of law and granting summary judgment on that basis). The Texas Supreme Court has articulated five factors which guide the Court when determining the effectiveness of a waiver of reliance provision in a contract: (a) whether the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (b) the complaining party was represented by counsel; (c) the parties dealt with each other in an arm's length transaction; (d) the parties were knowledgeable in business matters; and (e) the release language was clear.  *Forest Oil Corp.*, 268 S.W.3d at 60.  As set forth below, the Court finds Lamell's waiver of reliance is effective and precludes him, as a matter of law, from demonstrating justifiable reliance on representations not included in the Settlement Agreement.

> ***Clear Release Language***.  The disclaimer language is clear and direct:
>
> [Lamell] represents that *he fully understands* the terms of this Settlement Agreement . . . .  [*Lamell*] *further represents that he has not relied upon any representations by* [*CIT*] *regarding this Settlement Agreement.*

Dkt. 49-1 at 6 (emphasis added). This factor weighs in favor of effectiveness of the disclaimer of reliance.

> ***Discussion of Negotiated Terms***.  The provisions at issue are not mere boilerplate language and his pleadings and attachments to his Response to the Motion to Dismiss demonstrate that the parties negotiated the disputed terms.  For example, Lamell alleges that he agreed to go forward

with settlement of the state court case "[b]ased on [CIT's counsel's] clear assurances to him that the settlement she was proposing would preserve and protect his Statute of Limitations and other claims against USBNA and OCWEN (PHH)," but that when he actually received the draft settlement document, "he observed that [CIT's counsel's] draft appeared to be worded so that it would extend full releases of all his claims against USBNA and OCWEN instead of being limited to CIT alone." Dkt. 46 at ¶¶ 116, 121. Lamell alleges that he then made edits to the draft agreement, "including specific wording to clarify that, 'notwithstanding the foregoing, specifically excluded from the definition of 'CIT Released Parties' are US Bank NA, . . . [and] PHH Mortgage Services, their respective successors, assigns, affiliated parties, and any other entities or persons not named as parties in the litigation at issue herein.'" *Id*. ¶ 124. He further alleges that CIT's counsel rejected these changes. *Id*. ¶ 125. By Lamell's own allegations, the disputed terms were negotiated and not simply boilerplate. This factor weighs in favor of effectiveness of the disclaimer of reliance.

**Representation by Counsel**. The parties acknowledge that Lamell proceeded *pro se* during the course of the state lawsuit and that he was not represented by counsel during the settlement negotiations. Nevertheless, Lamell specifically asserted in the Settlement Agreement that he "had the opportunity to obtain and to rely on the legal advice of an attorney of his own choice, and that he fully understands the terms of this Settlement Agreement and that he voluntarily accepts such terms." Dkt. 49-1 at 6. While not an attorney, Lamell is a graduate of MIT (as shown by his email address). His extensive filings in this case and in the state case he litigated for over nine years, as well as his negotiations of the Settlement Agreement with opposing counsel, demonstrate that he understands the legal process and has the ability to conduct some legal research. Considering these circumstances, Lamell's *pro se* status is either neutral or weighs in favor of effectiveness of the

disclaimer of reliance. *See Matlock Place Apartments, LP v. Druce*, 369 S.W.3d 355, 372 (Tex. App.—Fort Worth 2012) (finding disclaimer of reliance bars fraud claims as a matter of law even though the party claiming fraud did not have an attorney during the negotiation of the contract); *RAS Group, Inc. v. Rent-A-Center East, Inc.*, 335 S.W.3d 630, 640 (Tex. App.—Dallas 2010) (finding disclaimer of reliance binding given the fact parties had the opportunity to consult with counsel and the clear, plain language demonstrated unequivocal intent to disclaim reliance).

*Arm's Length Transaction*.   Lamell's own pleading demonstrates that he and CIT negotiated the terms of the Settlement Agreement at arm's length as part of the process for bringing the multi-year litigation to a close.  Dkt. 46 ¶¶ 120-26.  This factor weighs in favor of effectiveness of Lamell's disclaimer of reliance.

*Knowledge of Matters at Issue*.   Lamell's pleadings in this case and the state case demonstrate that over the course of nine years, Lamell has represented himself in the state trial court, state appeals court, and federal court.  The substance of Lamell's Amended Answer and Counterclaims, his Third Supplemental Petition attached to the Motion to Dismiss, as well as the documents attached to Lamell's Response to the pending Motion to Dismiss demonstrate Lamell was knowledgeable about the foreclosure process and the possible effects of the release.  For example, although Lamell argues now that he was unaware of the effect of a release which included the successors and assigns of CIT, in the state court suit he specifically sought a declaratory judgment that the statute of limitations defense barred foreclosure actions brought by CIT *or its successors or assigns*.  Dkt. 49-2 at 3-4 ("[P]ending or future foreclosure of collection actions brought by CIT or its successors or assigns are now barred . . . by the [statute of limitations.] . . . Lamell now raises the expiration of limitations in defense against pending and possible future foreclosure or collection actions . . . .").  By his own admission in his pleading, Lamell recognized

the proposed release "appeared to be worded so that it would extend full releases of all of his claims against USBNA and [PHH] instead of being limited to CIT alone." Dkt. 46 ¶ 121. These facts alleged by Lamell demonstrate he understood the possible effects a release might have on future foreclosure or collection actions and weigh in favor of effectiveness of the disclaimer of reliance.

Based on the foregoing analysis of the Settlement Agreement and the circumstances surrounding its execution as described by Lamell, the Court concludes that, as a matter of law, Lamell's disclaimer of reliance in the Settlement Agreement is effective and prevents him from demonstrating the necessary element of reliance required for his fraud claims. Because Lamell (a) has failed to plausibly allege any misrepresentation by USBNA or PHH, and (b) cannot, as a matter of law, demonstrate the required element of reliance, he has failed to state any claim for fraud or fraud in the inducement against USBNA or PHH.

**2. Lamell has failed to state a claim for fraud by omission against USBNA or PHH.**

To state a claim for fraud by omission or non-disclosure, Lamell must show that PHH and USBNA had a duty to speak but deliberately remained silent. *See Plastic Specialties, Inc. v. JPMorgan Chase Bank, N.A.*, Case No. 1:19-CV-0874-SH, 2020 WL 4504605, at *3 (W.D. Tex. Aug. 5, 2020) (citations omitted). The duty to disclose arises only between parties in a confidential or fiduciary relationship, or between non-fiduciaries when "one party learns later that his previous affirmative statement was false or misleading." *Van Duzer*, 995 F. Supp. 2d at 696 (quotations omitted). Lamell has failed to plead any facts showing a confidential or fiduciary relationship with USBNA or PHH, or that they owe him a duty to disclose. In addition, he has failed to plead any facts which demonstrate any fraudulent omission by USBNA or PHH. Therefore, Lamell has failed to state a claim for fraud by omission against USBNA or PHH.

Given Lamell's inability to demonstrate reliance as a matter of law, and the fact that he has had an opportunity to amend his answer and counterclaims, the opportunity to amend his fraud claims would be futile and they should be dismissed with prejudice.  *See Mattes*, 2020 WL 6586713, at *3.

### C.  Lamell has failed to state a claim under TDCPA § 392.304(a)(8).

Section 392.304(a)(8) of the Texas Finance Code prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  TEX. FIN. CODE § 392.304(a)(8).  To maintain a claim under § 392.304(a)(8), Lamell must allege that PHH and USBNA made an "affirmative statement" that was false or misleading.  *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015).  An "affirmative statement" sufficient to support a claim under § 392.304(a)(8) must be a "false or misleading statement that '[led] [Lamell] to think differently with respect to the character, extent, amount, or status of [his] debt.'"  *See Robinson v. Wells Fargo Bank N.A.*, No. 3:18-CV-02176-S-BT, 2020 WL 7010043, at *6 (N.D. Tex. Oct. 15, 2020) (quoting *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)).

Lamell argues in support of his § 392.304(a)(8) claims that PHH and USBNA made a number of misrepresentations when they asserted certain legal theories in their Complaint.  These legal theories include (1) that PHH and USBNA had abandoned a prior acceleration of the loan, thereby restarting the statute of limitations; (2) that Lamell released his statute of limitations defense when he executed the Settlement Agreement; and (3) that Lamell's statute of limitations defense is barred by res judicata.  Dkt. 46 ¶ 153(b)(i)-(iii).  Lamell fails to allege any false statement by PHH or USBNA that led him to believe he owed a different amount, was not in default, or that he did not have a mortgage debt.  *See Robinson*, 2020 WL 7010043, at *6

20

(dismissing § 392.304(a)(8) claims where the plaintiff failed to allege a debt collector made representations that led her to believe she owed a different amount, she was not in default, or that she did not have an outstanding mortgage debt).  Therefore, Lamell's claims for violations of TDCPA § 392.304(a)(8) should be dismissed for failure to state a claim.  The Court further concludes amendment would be futile in this case, given that Lamell has already had an opportunity to amend and has failed to allege any false statements by PHH or USBNA either in his Amended Answer and Counterclaims or in the voluminous filings he has submitted in response to the Motion to Dismiss.  *See Mattes*, 2020 WL 6586713, at *3.

**D.  Lamell has failed to state a claim under TDCPA § 392.304(a)(19).**

Section 393.304(a)(19) of the TDCPA is a catch-all provision that prohibits using false representation or deceptive means to collect a debt or obtain information concerning a consumer. TEX. FIN. CODE § 394.304(a)(19). Lamell argues USBNA and PHH violated § 392.304(a)(19) by (1) fraudulently inducing him to sign the Settlement Agreement and (2) attempting to foreclose based on a "corrupted or just-in-time fabricated chain of title bearing endorsements that were not genuine . . . ." Dkt. 46 ¶¶ 163(a)(b)(iv)-(v).

With respect to Lamell's allegation that PHH and USBNA violated § 392.304(a)(19) by attempting to foreclose based on a fraudulent chain of title, this claim is barred by res judicata as it is a claim that arises from the same nucleus of operative facts as the claims in the prior state court litigation.  In fact, Lamell alleges in his Amended Answer and Counterclaims that he "formally challenged" the chain of title in state court.  Dkt. 46 ¶ 88 ("Lamell formally challenged the genuineness of the endorsements that had suspiciously appeared on the Note in his February 18, 2013 '*Plaintiff's Supplement to Plaintiff's Supplemental Petition*.'"); *see also supra* § III.A

21

(finding res judicata bars Lamell's claims that were or could have been brought in the state court litigation).  Therefore, res judicata bars Lamell's counterclaim under § 392.304(a)(19).

With respect to Lamell's claim that PHH and USBNA violated § 392.304(a)(19) by fraudulently inducing him to sign the Settlement Agreement, the claim must be dismissed for the reasons discussed above, including Lamell's inability as a matter of law, to prove reliance.  In addition, to state a claim under § 392.304(a)(19), Lamell must allege a material misrepresentation by USBNA or PHH that was false or misleading .  *Clark v. Deutsche Bank Nat. Tr. Co., as trustee for Morgan Stanley ABS Capital I, Inc., Tr. 2006-HE3*, 719 F. App'x 341, 344 (5th Cir. 2018) (citations omitted).  Lamell has failed to allege any false or misleading statement by PHH or USBNA made during the negotiation of the Settlement Agreement and has failed to plausibly allege facts by which CIT's or its counsel's statements can be attributed to USBNA or PHH.  Therefore, Lamell has failed to state a claim based on § 392.304(a)(19) and the claim should be dismissed.  The Court further concludes amendment would be futile in this case, given that Lamell has already had an opportunity to amend and has failed to allege any false statements by PHH or USBNA either in his Amended Answer and Counterclaims or in the voluminous filings he has submitted in response to the Motion to Dismiss.  *See Mattes*, 2020 WL 6586713, at *3.

## IV.  CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** PHH's and USBNA's Motion to Dismiss Lamell's Counterclaims and Motion to Strike be **GRANTED**.  The Clerk of Court shall send copies of the Memorandum and Recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the

factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on January 18, 2021 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge