United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE FOR CSMC MORTGAGE- | § | |
| BACKED TRUST 2007-3, AND PHH | § | |
| MORTGAGE CORPORATION, INDIVIDUALLY | § | |
| AND AS SUCCESSOR-IN-INTEREST TO | § | |
| OCWEN LOAN SERVICING, LLC | § | |
| | § | Civil Action No.: 4:19-cv-2402 |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| JOSEF M. LAMELL AKA J.M. ARPAD | § | |
| LAMELL, | § | |
| | § | |
| *Defendant*. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

This matter is before the Court on PHH Mortgage Corporation's ("PHH") and U.S. Bank National Association's ("USBNA") Motion for Summary Judgment. Dkt. 32. This Amended Memorandum and Recommendation differs from the previous Memorandum and Recommendation (Dkt. 82) only with respect to Section IV.C. regarding PHH's and USBNA's entitlement to non-judicial foreclosure. Having considered the pleadings, the summary judgment record, and the law, the Court **RECOMMENDS** the Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case involves an ongoing dispute regarding the potential foreclosure of a property located at 5131 Glenmeadow Drive (the "Property") which has spanned more than nine years and two lawsuits. Dkt. 18 ¶ 4. In this suit, PHH and USBNA seeks declarations from the Court that

1

the statute of limitations does not prevent enforcement of the loan and security interest in the Property by foreclosure, that Lamell released any claim barring enforcement of the loan agreement, and in the alternative, that PHH and USBNA are equitably subrogated to the rights of the prior lienholders whose liens were paid off by PHH and USBNA or their predecessors in interest. *Id.* ¶ 26. Lamell asserts, among other things, that the statute of limitations bars enforcement of the loan agreement and foreclosure, and that the release he executed was induced by fraud. Dkt. 46.

In connection with the purchase of the Property in September 2006, Lamell executed a Note and Deed of Trust granting a security interest in the Property to Home123 Corporation ("Home123"). Dkt. 18 ¶¶ 15-16. Mortgage Electronic Registration Systems, Inc. ("MERS") was named the beneficiary the Deed of Trust and nominee of Home123. *Id.* ¶ 17; Dkt. 32-1 at 20. In April 2010, MERS, as nominee for Home123, assigned the Deed of Trust to USBNA via an Assignment of Mortgage. Dkt. 18 ¶ 17. USBNA is the current holder of the Note and beneficiary of the Deed of Trust PHH is the current servicer of the Loan. *Id.* ¶ 18. USBNA and PHH allege in this lawsuit that Lamell has breached Section 3 of the Note and Section 1 of the Deed of Trust, both of which obligate Lamell to make monthly payments. *Id.* ¶ 20. Lamell has not made a payment on the Loan since February 1, 2010. Dkt. 32-1 at 5.

Lamell's first lawsuit, filed in state court in February 2010, began as an action against the Harris County Appraisal District, its Review Board, and the Harris County Tax Assessor for fraud related to tax assessments and charges on the Property. Dkt. 32-2 at 21-43. As the result of an attempted foreclosure proceeding on the Property by CIT Bank, NA ("CIT"), the servicer of the mortgage at the time, Lamell added CIT as a defendant in the state court lawsuit on May 2, 2010.[1]

---

[1] Lamell incorrectly identified CIT as IndyMac Mortgage Services ("IndyMac") in the state court suit. The party identified as IndyMac by Lamell is identified by CIT throughout this Memorandum and Recommendation. *See* Dkt. 32-1 at 58.

Dkt. 32-2 at 65-120.  Lamell filed the Third Supplemental Petition in the state court suit on April 9, 2019, in which he argued the statute of limitations barred foreclosure of the Property.  *Id*. at 126-132.  Shortly after the state court granted Lamell leave to file his Third Supplemental Petition, CIT and Lamell settled the state court suit and executed a settlement agreement (the "Settlement Agreement").  Dkt. 32-1 at 58-66.  On May 16, 2019 the state court signed an Agreed Order Dismissing All Claims with Prejudice (the "Order of Dismissal").  Dkt. 32-2 at 137-38.  The Order of Dismissal stated that it "disposes of all parties and all claims and is therefore final." *Id*. at 138. On July 11, 2019, more than thirty days after signing the Order of Dismissal, the state trial court signed the Order Vacating Order of May 16, 2019 Dismissing All Claims with Prejudice ("the Vacating Order").  *Id*. at 140.  CIT filed a writ of mandamus, arguing the trial court's plenary jurisdiction over the case expired before the July 11, 2019 Vacating Order was entered.  *Id*. at 156. The Court of Appeals ruled that the trial court's plenary jurisdiction had expired prior to the entry of the Vacating Order and, therefore, it was void for lack of jurisdiction.  *Id*. at 160.  The Court of Appeals granted mandamus relief compelling the trial court judge to vacate the Vacating Order. *Id*.  Thus, the May 16, 2019 Order of Dismissal remains a final order in the state court case.

Throughout the pendency of the state court proceedings, Lamell made no mortgage payments.  Dkt. 32-1 at 5.  On April 8, 2010, CIT sent Lamell the First Notice of Default advising him the mortgage was in default, that he needed to tender $14,532.07 within 30 days to become current on the loan, and that failure to cure the default would result in an acceleration of the debt. *Id*. at 51-52.   On June 4, 2010, 2011, USBNA, through its attorneys, sent Lamell the first Notice of Acceleration, informing him USBNA had elected to accelerate the loan balance.  Dkt. 57-3 at 27-30.  USBNA/CIT sent five additional Notices of Acceleration between June 4, 2010 and February 8, 2018.  *Id*. at 27-30, 32-34; Dkt. 57-4 at 2-4, 12-14, 21-23; Dkt. 32-2 at 54-56.

CIT's loan servicing responsibilities were transferred on October 16, 2013 to Ocwen Loan Servicing, LLC ("Ocwen"), who notified Lamell of the transfer on November 1, 2013.  Dkt. 32-1 at 69-76.  Despite the prior Notices of Acceleration, between January 2014 and April 2014, Ocwen mailed multiple mortgage account statements to Lamell requesting payment of less than the full accelerated loan amount.  *Id.* at 78-79, 98, 100, 102-03.  Ocwen also mailed Mortgage Assistance Resources letters to Lamell on January 22, 2014 and February 10, 2014 offering him the opportunity to apply for loan assistance, including possible modification of the Loan.  *Id.* at 81-96.

On May 1, 2019, just before Lamell settled the state court suit, the servicing of the loan was assumed by PHH.  *Id.* at 105-11.  On July 2, 2019, PHH sent Lamell the Second Notice of Default advising him that the Loan was in default and that he would be required to pay the amount past due to avoid foreclosure.  *Id.* at 113-16.  When Lamell failed to cure his default, PHH sent a seventh Notice of Acceleration to Lamell demanding the total balance of $1,289,102.72.  *Id.* at 118.

On August 21, 2019 USBNA and PHH filed suit in federal court.  Dkt. 1.  In the pending Motion for Summary Judgment, PHH and USBNA seek summary judgment on their affirmative claims that they are entitled to declaratory judgment that (1) the statute of limitations does not bar enforcement of the Note and Deed of Trust; (2) they have the right to pay property taxes assessed on the Property and Lamell is precluded from deferring payment of those taxes by the terms of the Note and Deed of Trust; and (3) they are entitled to foreclosure on the property by trustee's sale. Dkt. 32 at 18-35. In the alternative, USBNA and PHH seek a declaration that they are entitled to equitable or contractual subrogation.  *Id.* at 36-39.

## II. LAMELL'S OBJECTIONS TO THE SUMMARY JUDGMENT EVIDENCE

As a preliminary matter, the Court considers Lamell's objection to the declaration of Talya Alkins, the Contact Management Coordinator for PHH, submitted by PHH and USBNA in support of their Motion.  Dkt. 57 ¶¶ 1-12.  In her declaration, Alkins provides testimony about the history of the loan, beginning with the execution of the Note and Deed of Trust, and identifies many attached documents relevant to the disposition of the pending Motion.  Dkt. 32-1 at 2-11.  Lamell calls the declaration "defective" and argues PHH and USBNA have failed to provide admissible summary judgment evidence.[2]  Dkt. 57 at 7-9.

Lamell first objects to Alkins' Declaration to the extent it discusses and authenticates records created by prior loan servicers.  *Id*. ¶ 5.  In her Declaration, Alkins explains that previous servicers' records were integrated into PHH's systems "such that the prior servicer's records concerning the loan are now part of PHH's business records."  Dkt. 32-1 at 3.  Lamell argues, however, that Alkins' testimony is defective because she has no personal knowledge of the creation of records by prior servicers.  Dkt. 57 ¶ 5.  While an affidavit in support of summary judgment must be based on personal knowledge, that personal knowledge may come from an employee's review of her employer's business records where her position with the employer renders her competent to testify on the matters included in the affidavit.  *Laguette v*. *U*.*S*. *Bank*, A-13-CY-495 LY, 2014 WL 11498178, at *3 (W.D. Tex. Feb. 28, 2014) (quoting *Carson v*. *Perry*, 91 F.3d 138, 138 (5th Cir. 1996)).  Alkins is the Contact Management Coordinator of PHH and as part of the regular performance of her job, she is familiar with records maintained by PHH for the purpose of servicing mortgage loans, collecting payments, and pursuing delinquencies.  Dkt. 32-1 at 2-3.  By the nature of her position with PHH, Alkins is competent to testify to the facts contained in the

---

[2] In addition to Lamell's objection to Alkins' Declaration, he argues summary judgment is improper because USBNA and PHH have failed to address any of his counterclaims.  Dkt. 57 ¶ 12.  Lamell misunderstands the nature of this Motion, which seeks summary judgment only on USBNA and PHH's affirmative claims in the Complaint.  USBNA and PHH filed a separate motion to dismiss Lamell's counterclaims under Rule 12(b)(6).  Dkt. 49.

affidavit.  *See Tremble v. Wells Fargo Home Mortg., Inc.*, Civil Action No. G-11-160, 2011 WL

2959624, at *6 (S.D. Tex. July 20, 2011) (overruling objections to an affidavit where the affiant,

by virtue of his position in his employer corporation, was competent to testify on the corporation's

business records and stated all information was true, correct, and within his personal knowledge).

Further, to the extent Lamell suggests Alkins' affidavit lacks "veracity" or that it should be

disregarded due to Alkins' lack of credibility, the Court may not weigh evidence or evaluate the

credibility of an affiant on summary judgment.  Dkt. 57 ¶ 4; *see Caboni v. Gen. Motors Corp.*, 278

F.3d 448, 451 (5th Cir. 2002).  Instead, this Court's inquiry is limited to whether, after considering

the entire summary judgment record and drawing all reasonable inferences in favor of the non-

movant, any genuine issue of material fact exists which would preclude summary judgment.  *See*

*Thornton v. Hughes, Watters & Askanase, LLP*, Civil Action No. 2:16-CV-66, 2016 WL 8710442,

at *6 (S.D. Tex. Oct. 21, 2016) (citations omitted).  Therefore, the Court recommends Lamell's

objections to Alkins' affidavit be overruled, and the Court will consider the affidavit as part of the

entire summary judgment record.

### III.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if no genuine issues of material fact exist, and the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving

for summary judgment has the initial burden to prove there are no genuine issues of material fact

for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  A dispute

is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party and an

issue is "material" if its resolution could affect the outcome of the case.  *Hyatt v. Thomas*, 843 F.3d

172, 177 (5th Cir. 2016); *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290

F.3d 303, 310 (5th Cir. 2002).

Once the moving party establishes the absence of disputed fact issues, the burden shifts to the non-moving party to produce evidence of a genuine issue of material fact. The non-moving party must "go beyond the pleadings" and use affidavits or other competent summary judgment evidence to cite "specific facts" that show there is a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). The Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

## IV.  ANALYSIS

### A.  USBNA and PHH have failed to demonstrate, for summary judgment purposes, that the statute of limitations for foreclosure is unexpired.

The Court must apply Texas law when determining whether USBNA and PHH are entitled to a declaration that the statute of limitations for foreclosure has not expired. *See Ernst v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-428-RP, 2019 WL 7761444, at *3 (W.D. Tex. Nov. 22, 2019) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938)). In doing so, the Court must apply the law as announced by the Texas Supreme Court or, in the absence of such guidance, must predict what the highest court would decide if confronted with the same issue. *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x 302, 305 (5th Cir. 2018) (citations omitted) (quoting *In re Complaint of John E. Graham & Sons*, 210 F.3d 333, 337 (5th Cir. 2000)). Also, the Court must "follow the decisions of intermediate state courts" unless there is "convincing evidence that the highest court . . . would decide [the matter] differently." *Id.* (quoting *Stoner v. NY Life Ins. Co.*, 311 U.S. 464, 467 (1940)).

Under Texas law, a secured lender must foreclose on a real property lien no later than four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a). In general, a cause of action for foreclosure accrues on the maturity date of the loan but, if the deed of trust

includes an optional acceleration clause, a cause of action for foreclosure accrues if and when the holder of the note exercises the option to accelerate the loan. *Robins v. PHH Mort. Corp.*, Civil Action No. 4:20-CV-1163, 2020 WL 5604042, at *2 (S.D. Tex. Sep. 18, 2020) (quotations omitted). Thus, acceleration of the loan starts the clock on the statute of limitations and a lender must foreclose within four years of receipt of a notice of acceleration. *See Bank of N.Y. Mellon Tr. Co., N.A. v. Millard*, Cause No.: A-15-CA-01035-SS, 2017 WL 3446033, at *3-4 (W.D. Tex. 2017) (explaining the four-year statute of limitations begins running upon receipt of a notice of acceleration).

However, acceleration of a loan may be abandoned unilaterally by a lender. *King v. Select Portfolio Servicing, Inc.*, 740 F. App'x 814, 816 (5th Cir. 2018) (citations omitted). If a lender abandons acceleration, the accrual date is reset and reverts to the note's maturity date, and the noteholder is no longer required to foreclose within four years from the date of that acceleration. *Leonard v. Ocwen Loan Servicing, LLC*, 616 F. App'x 677, 679 (5th Cir. 2015) (citations omitted) (citing *Khan v. GBAK Prop., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.], 2012)); *Cantu v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. 7:15-CV-87, 2016 WL 6820930, at *4 (S.D. Tex. June 3, 2016) (citations omitted). Following abandonment of an acceleration, a new limitations period does not accrue prior to the note's maturity date unless the lender subsequently renews its right to reaccelerate. *See Guzman v. Bank of N.Y. Mellon*, No. 5:16-CV-1210-DAE, 2018 WL 8061011, at *5 (W.D. Tex. Feb. 23, 2018) (citing *Boren v. U.S. Bank Nat. Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015)). A lender can unilaterally abandon a previous acceleration "through conduct that is inconsistent with acceleration of the note." *Pitts v. Bank of N.Y. Mellon Tr. Co.*, 583 S.W.3d 258, 263 (Tex. App.—Dallas 2018). "When an acceleration is abandoned by conduct, the intent to abandon must be *unequivocally manifested*." *Sexton v. Deutsche Bank Nat'l Co. for*

*GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x 302, 305 (5th Cir. 2018) (citations omitted) (emphasis added).

The Deed of Trust in this case includes an optional acceleration clause. Dkt. 32-1 at 31. Lamell argues that USBNA accelerated the loan on June 4, 2010 when it sent Lamell the first Notice of Acceleration, that the foreclosure action accrued on that date, and that the statute of limitations expired no later than June 28, 2016.[3]  Dkt. 57 ¶¶ 25, 69, 73-74.  PHH and USBNA, on the other hand, argue the June 4, 2010 acceleration was abandoned, and foreclosure was not required to occur within four years of the date of that acceleration.[4]  Dkt. 32 at 25-27.  *See Stewart v. U.S. Bank Nat. Ass'n*, 107. F. Supp. 3d 705, 708 (S.D. Tex. 2015) (citations omitted) ("If acceleration is abandoned, running of the statute of limitations period is likewise abandoned, and the noteholder no longer has to foreclose within four years of the date of acceleration.").  As evidence of their intent to abandon the June 4, 2010 acceleration, PHH and USBNA offer (1) monthly statements sent to Lamell between January 20, 2014 and April 17, 2014, which requested payment of an amount less than the accelerated loan amount, and (2) letters sent to Lamell on January 22, 2014 and February 10, 2014 inviting him to apply for mortgage assistance resources, including various loan modification options.  Dkt. 32-1 at 78-103.  PHH and USBNA argue the requests for payment of less than the accelerated loan obligation and the invitation to apply for mortgage assistance are inconsistent with the prior accelerations and unequivocally evidence their

---

[3] Lamell alleges the four-year statute of limitations was tolled between (1) February 28, 2012 and April 3, 2012; (2) May 31, 2012 and January 31, 2014; and (3) May 31, 2014 and January 31, 2014.  Dkt. 57-3 at 24.

[4] Between June 4, 2010 and February 8, 2013, USBNA sent Lamell six separate notices of acceleration.  Viewing all facts and inferences in the light most favorable to Lamell as the non-movant, the Court will assume USBNA and PHH's foreclosure claim accrued at the time of the earliest notice of acceleration on June 4, 2010.  *See Espinoza v. State Farm Mutual Auto. Ins. Co.*, Civil Action No. 7:19-cv-00299, 2020 WL 5040409, at *2 (S.D. Tex. Aug. 26, 2020) (explaining a court must view all facts and inferences in the light most favorable to the non-movant on a motion for summary judgment).  The summary judgement evidence of abandonment offered by PHH and USBNA is limited to statements and letters sent to Lamell between January 20, 2014 and April 17, 2014.  Dkt. 32-1 at 78-103.  To the extent these letters represent an intent to abandon the June 4, 2010 acceleration, they likewise represent an intent to abandon each of the accelerations between June 4, 2010 and February 8, 2013.

9

intent to abandon the acceleration. *See Pitts*, 583 S.W.3d at 263 (explaining a lender may abandon acceleration "through other conduct that is inconsistent with the acceleration of the note.").

The Fifth Circuit and Texas courts have consistently held that a lender may abandon acceleration by sending subsequent notices seeking less than the full accelerated amount of the loan so long as that correspondence shows an unequivocal intent to abandon the acceleration. *Ernst*, 2019 WL 7761444, at *5 (citing *Sexton*, 731 F. App'x at 308; *Pitts*, 583 S.W.3d at 265). For example, the Fifth Circuit held a lender unequivocally manifested its intent to abandon a prior acceleration by sending the borrower a notice of default which (1) requested less than the full accelerated amount of the loan and (2) informed the borrower that, if she did not cure the default, the loan might be accelerated *in the future*. *See Boren*, 807 F.3d at 103. While the statements offered by USBNA and PHH request payment of less than the full accelerated amount of the loan, the Court cannot find as a matter of law that they constitute an *unequivocal* intent to abandon the acceleration. Unlike *Boren*, the statements in this case do not include language suggesting the loan could be subject to future acceleration if the requested amount remains unpaid. *See id.* at 106. To the contrary, viewed in the light most favorable to Lamell, the monthly statements and letters sent to Lamell include language seemingly "consistent with continued reliance on the earlier acceleration[.]" *See Ernst*, 2019 WL 7761444, at *5 (quoting *Pitts*, 583 S.W.3d at 265-66). Specifically, the statements advise Lamell that "[o]ur records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only." Dkt. 32-1 at 78, 98, 101-02. This language prevents the Court from deciding on summary judgment that the monthly statements constitute an unequivocal intent to abandon the acceleration. *See Pitts*, 583 S.W.3d at 265-66 (denying summary judgment that acceleration was abandoned where monthly statements contained language that was "consistent with continued reliance on the earlier

acceleration.").   Notably, the state appellate court in *Pitts* held that language *identical* to the language at issue in this case did not constitute *unequivocal* manifestation of intent to abandon acceleration and raised a genuine issue of material fact as to whether the prior acceleration had been abandoned.  *See id*. at 265-66 (holding statements that omitted language indicating an intent to accelerate in the future, combined with language that the loan was in the process of being foreclosed, raised a genuine issue of material fact as to whether the prior acceleration had been abandoned).

USBNA and PHH also included in the summary judgment record letters sent to Lamell on January 22, 2014 and February 10, 2014, which invited Lamell to submit an application for mortgage assistance resources, including possible loan modification options.  Dkt. 32-1 at 81-96. PHH and USBNA offer these letters as evidence of their unequivocal intent to abandon the prior accelerations.  *Id*.  The letters advised Lamell that he could submit an application for mortgage assistance and also laid out "alternatives to foreclosure" that might be available to him, including loan modification, a deed in lieu of foreclosure, or a short sale.  *Id*.  There is no evidence in the record to suggest Lamell ever submitted an application in response to either of these letters.

Like the monthly statements, these letters do not allow the Court to find as a matter of law that PHH and USBNA unequivocally manifested intent to abandon the June 4, 2010 acceleration. The letters offer only to review application materials submitted by Lamell and do not guarantee loan modification.  While loan modification can serve as abandonment of acceleration, a mere *offer* of loan modification is more like a "conditional abandonment" that, standing alone, does not constitute an unequivocal manifestation of intent to abandon the acceleration.  *See Swoboda v. Ocwen Loan Servicing, LLC*, Civil Action No. 4:13-CV-2986, 2015 WL12778394, at *2 (S.D. Tex. Aug. 10, 2015) ("[A]bsent more, an offer of a loan modification agreement is at most a

11

*conditional* abandonment: if the borrower does not accept the loan modification, then the status of the loan does not change and the prior acceleration remains intact.").  The two letters also state that PHH "may also continue any pending foreclosure proceedings on the property."  Dkt. 32-1 at 82, 94.  This language is consistent with a continued reliance on the previous acceleration and does not serve as unequivocal intent to abandon the acceleration.  *See Ernst*, 2019 WL 7761444, at *6 (citations omitted).

Drawing all reasonable inferences in favor of Lamell, the monthly statements and loan modification letters do not evidence an unequivocal intent to abandon the June 4, 2010 acceleration.  *See Sexton*, 731 F. App'x at 307 (explaining that statements advising the "loan is in foreclosure" were at most ambiguous regarding intent to abandon acceleration); *see also Ernst*, 2019 WL 7761444, at *6 (finding statements advising the "loan is in foreclosure" ambiguous on the question of abandonment).  Because PHH and USBNA have failed to present evidence of an unequivocal intent to abandon the prior accelerations, the Court cannot find as a matter of law that the statute of limitations is unexpired.  Therefore, the Court recommends denying summary judgment on PHH's and USBNA's claim for a corresponding declaratory judgment.

## B.  PHH and USBNA have presented summary judgment evidence demonstrating Lamell's statute of limitations defense is barred by res judicata.

The doctrine of res judicata precludes the re-litigation of claims that have been finally adjudicated or should have been raised in a prior suit.  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *Citizens Ins. Co of Am. v. Daccach*, 217 S.W. 3d 430, 448 (Tex. 2007) ("Generally, res judicata prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit.").  "The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery."  *Daccach*, 217 S.W.3d at 449.  Whether

a prior judgment has res judicata effect on a later claim is a question of law for the court. *Murphy v. HSBC Bank USA*, Civil Action No. H-12-3278, 2017 WL 393595, at \*4 (S.D. Tex. Jan. 30, 2017) (citing *Daccach*, 217 S.W. 3d at 449). "A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Van Duzer v. U.S. Bank Natl. Assoc.*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014), aff'd, 582 F. App'x. 279 (5th Cir. 2014) (quoting *E.D. Sys. Cor. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982)). Under Texas law, "[f]or res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Daccach*, 217 S.W. 3d at 449 (citations omitted).

1. **A court of competent jurisdiction rendered a final judgment on the merits in the previous action.**

Lamell does not dispute that the 127th District Court of Harris County, Texas is a court of competent jurisdiction and this Court finds it had jurisdiction to hear the claims in the prior suit and issue a final judgment on the merits.

The Judge of the 127th District Court signed the Order of Dismissal on May 16, 2019. The Order of Dismissal states that it "disposes of all parties and all claims and is therefore final." Dkt. 32-2 at 138. *See* Dkt. 32-2 at 137-38. "An agreed judgment of dismissal in settlement of a controversy is a judgment on the merits" for purposes of res judicata. *N.Y. Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 968 (S.D. Tex. 2014) (quoting *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App. 2000)).

On July 11, 2019, more than thirty days after signing the Order of Dismissal, the state trial court signed an order vacating the Order of Dismissal ("the Vacating Order"). Dkt. 32-2 at 140.

CIT filed a writ of mandamus, arguing that the trial court's plenary jurisdiction over the case expired before the Vacating Order was entered. The Court of Appeals ruled that the trial court's plenary jurisdiction had expired prior to the entry of the Vacating Order and, therefore, it was void for lack of jurisdiction. *Id*. at 156-61. The Court of Appeals granted mandamus relief compelling the trial court judge to vacate the Vacating Order and the trial court judge did so on November 5, 2020. Dkt. 72-1 at 2-3. Thus, the May 16, 2019 Order of Dismissal remains a final order in the state case and constitutes a final judgment on the merits. *N.Y. Pizzeria, Inc*. 53 F. Supp. 3d at 968 (quoting *Freeman*, 11 S.W.3d at 483).

**2. CIT, a party to the state court judgment, is in privity with *USBNA and PHH*.**

A party can be in privity for res judicata purposes if it is a successor in interest to a party in the prior action. *Samuel v. Fed. Home Loan Mortg. Corp*., 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014) (citations omitted) (citing *Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 652 (Tex. 1996)). "Privity connotes those who are so connected with a party to the judgment in the law such that the party to the judgment represented the same legal right." *Id*. (citations omitted). A non-party to a prior judgment can be in privity with a party to the judgment if (1) its interests are represented by a party to the prior action or (2) it is a successor-in-interest deriving its claim through a party to the prior action. *Id*. at 234-35.

*USBNA is in privity with CIT.* The relationship between a mortgagee/mortgage holder and mortgage servicer establishes privity needed for res judicata. *Rivas v. U.S. Bank Nat'l Ass'n as Trustee for Mastr Asset Backed Securities Tr. 2007-HE-2*, No. CV H-14-3246, 2015 WL 13743456, at *2 (S.D. Tex. June 24, 2015), *adopted by* 2015 WL 8215137 (S.D. Tex. Dec. 8, 2015); *Castillo v. Select Portfolio Servicing, LLC*, Civil Action No. DR-16-CV-044-AM/CW, 2017 WL 2999705, *4 (W.D. Tex. Mar. 21, 2007) ("Courts uniformly have held that mortgage

assignees and servicers are sufficiently in privity [for res judicata purposes].”); *Porter v. Cenlar FSB*, No. 05-14-00663-CV, 2016 WL 1019359, *5 (Tex. App.—Dallas, 2016) (finding mortgagee, mortgage servicer, and their counsel all shared as “common identity of interests” which established privity for res judicata purposes); *Witherspoon v. Specialized Loan Servicing, LLC*, Civil Action No. H-17-2675, 2018 WL 2985893, at *7 (S.D. Tex. Apr. 12, 2018) (finding loan servicer and mortgagee in privity for purposes of res judicata).

In addition, the summary judgment record demonstrates that CIT and USBNA have contractual privity and CIT represented USBNA’s interests in the prior litigation. *See Samuel*, 434 S.W.3d at 234-35 (noting privity can be established for res judicata purposes by showing a party to the prior judgment represented the non-party’s interests in the prior litigation). The uncontroverted summary judgment evidence demonstrates that USBNA, the mortgagee, authorized the mortgage servicer, CIT (OneWest Bank/IndyMac), to service the mortgage by entering into a servicing agreement with CIT. [5] Dkt. 32-1 at 54 (“Pursuant to the servicing agreement [between USBNA and CIT] and the Texas Property Code Sec. 51.0025, the Mortgage Servicer [CIT] is authorized to administer any foreclosure of the property secured by the . . . loan.”). CIT acted as servicer for USBNA until October 16, 2013 when it transferred servicing to Ocwen. *Id*. at 69-76. The summary judgment record and Texas case law clearly establish that USBNA is in privity with CIT for purposes of the res judicata effect of the prior state court suit.

**PHH is in privity with CIT.** A party can be in privity for res judicata purposes if it is a successor in interest to a party in the prior action. *Samuel*, 434 S.W.3d at 235 (citing *Amstadt*, 919

---

[5] Lamell filed suit against CIT in state court on February 22, 2010, when Home123 was the mortgagee/mortgage holder and CIT was the mortgage servicer. Dkt. 32-2 at 21-43. Home123 assigned the mortgage to USBNA, effective April 11, 2010. Dkt. 32-1 at 4, 46-47. CIT continued to act as servicer of the loan on behalf of USBNA during the pendency of the state court suit and is a party to the order dismissing the state court suit with prejudice.

S.W.2d at 653).  PHH is a successor to the interests of CIT in the prior state court suit.  Lamell

alleges that the right to service the mortgage was transferred from CIT to Ocwen.  Dkt. 46 ¶ 89.

He also alleges Ocwen and PHH "are one and the same party now known as PHH[,] by virtue of

their business combination through a merger or acquisition of OCWEN by PHH" and are

"interchangeable as to being the same party in this case."  *Id*. ¶ 79 n.2.  The summary judgment

record further supports these allegations. Dkt. 32-1 at 69-76, 105-111.  As with CIT when it was

acting as the mortgage servicer, Lamell was notified that PHH would be servicing the mortgage

on behalf of the mortgagee, USBNA:

> PHH . . . is the mortgage servicer for the mortgagee of the Deed of Trust and the
> parties have entered into an agreement granting PHH . . . authority to service the
> mortgage and represent the mortgagee (the "Servicing Agreement").  Pursuant to
> the Servicing Agreement, PHH . . . is granted authority to collect and service debt
> associated with the Deed of Trust.  Under § 51.0025 of the Texas Property Code,
> PHH . . ., as mortgage servicer, is authorized to administer any resulting foreclosure
> of the property covered by the Deed of Trust on behalf of the Mortgagee.

*Id*. at 114.  As a successive servicer in the chain of mortgage servicers, Ocwen/PHH is in privity

with CIT and entitled to assert the res judicata effect of the prior state court judgment dismissing

all claims with prejudice.  *See Rivas*, 2015 WL 13743456, at *2 (finding the "successor status

establishes the requisite privity" between a loan servicer and its successor loan servicer).

### 3.  Both actions involve the same statute of limitations claim based on the same nucleus of operative facts.

The Texas Supreme Court has explained that "a final judgment on an action extinguishes

the right to bring suit on the transaction, or series of connected transactions, out of which the action

arose." *Grady v. Nationstar Mortg., LLC,* No. 02-19-00006-CV, 2020 WL 5242418, at *7 (Tex.

App.—Fort Worth Sep. 3, 2020) (citing *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837

S.W.2d 627, 631 (Tex. 1992)).  To determine whether an entire lawsuit or a particular claim is

barred by res judicata, Texas courts follow the transactional approach, which means the court

16

examines the factual bases of the two cases. *Samuel*, 434 S.W.3d at 234. The main concern of the transactional approach is whether the cases share the same nucleus of operative facts. *Id*.

In the state court case and this case, Lamell sought and seeks a declaration that any future foreclosure on his property is barred by the statute of limitations.  In his "Third Supplement" to his state court Petition, Lamell sought a declaratory judgment that the statute of limitations barred CIT's foreclosure efforts.  Dkt. 32-2 at 126-32.  In fact, Lamell wrote in the Third Supplement filed in the state case that

> As a result of CIT's never having completed its ongoing Non-Judicial Foreclosure, never having filed suit to enforce collection on the Note, AND never having abandoned acceleration in the nearly 9-year history of this case, the . . . Statutes of Limitations . . . have run their course and barr [sic] any such action *by CIT or any successor* now.

> Accordingly, pending or future foreclosure or collection actions brought by CIT or its successors or assigns are now barred . . . by the . . . Statute of Limitations . . . [and the expiration of the statute of limitations] automatically rendered BOTH the "Power of Sale" provisions of the Deed of Trust AND the Deed of Trust lien securing the Note itself, VOID . . . .

*Id*. at 128 (emphasis added).  Lamell also stated in state court pleadings that he was "rais[ing] the expiration of limitations in defense against pending and possible future foreclosure or collection actions related to his loan being continually in foreclosure. "  *Id*. at 129.

In the present suit, Lamell alleges he was fraudulently induced into signing the Settlement Agreement and consenting to dismissal of all claims in the state court suit. Dkt. 46 ¶¶ 141-42. He alleges his damages are the value of the loss of his statute of limitations defense which, he argues, would void the Deed of Trust and preclude future collection and foreclosure actions. *Id*. ¶ 146. Furthermore, in this suit Lamell seeks declarations that the statute of limitations for enforcing or collecting on the Note has expired; the Deed of Trust and lien are void as a result; PHH and USBNA have no authority to foreclose or collect on the Note; PHH and USBNA are permanently

barred from collecting on the Note or foreclosing on the property; the endorsements on the note are not genuine; and USBNA does not own the note. *Id.* ¶ 155. Without doubt, Lamell's claims in this suit involve the very same claims and facts at issue in the state court suit. Certainly, there can be no doubt that Lamell's counterclaim and defenses based on the allegation that the statute of limitations has expired involve the exact same facts alleged in the state court suit.

Because PHH and USBNA have presented evidence establishing each element of res judicata with respect to Lamell's statute of limitations defense, the Court recommends their Motion for Summary Judgment on this issue be granted.[6]

## C. PHH and USBNA are entitled to a declaratory judgment for foreclosure by trustee's sale.

PHH and USBNA seek a declaratory judgment that they are entitled to non-judicial foreclosure because the Loan is in default, PHH and USBNA have standing to foreclose, and all required notices have been made to Lamell. Dkt. 32 at 18.

The summary judgment record shows Lamell is in default under the Note. *See* Dkt. 32-1 at 14 (defining default in the Note). Under the terms of the Note and Deed of Trust, Lamell was required to pay principal and interest on the debt when due and a failure to pay the full amount of each monthly payment on the due date constituted a default. *Id.* at 14, 22. Lamell has failed to present any summary judgment evidence disputing that he failed to make the required payments.

---

[6] PHH and USBNA also argue Lamell released his statute of limitations defense when he executed the Settlement Agreement. Dkt. 32 at 27-29, 39. The Settlement Agreement states that it shall be binding on and inure to the benefit of the . . . successors and assigns of each of the parties hereto." Dkt. 32-2 at 63. The parties to the Settlement Agreement are Lamell and CIT. *Id.* at 58. As a successor of CIT, PHH most likely would be entitled to enforce the release against Lamell. However, USBNA has produced no summary judgment evidence and did not demonstrate in any of its briefing that USBNA is a successor or assign of CIT or entitled to enforce the release against Lamell. The fact that USBNA is in privity with CIT with regard to the Order of Dismissal does not mean USBNA is entitled to enforce Lamell's release of claims as contained in the Settlement Agreement between CIT and Lamell. Because the Court concludes that res judicata would bar Lamell's statute of limitations defense as to both PHH and USBNA, the Court does not address the alternative release argument as to PHH or USBNA.

In addition, the Notice of Intention to Foreclose dated July 2, 2019 constitutes evidence that Lamell failed to make a required payment after February 2, 2010 and, therefore, was in default. *Id.* at 113.

The summary judgment record also shows PHH and USBNA have standing to seek non-judicial foreclosure. Under the Texas Property Code, a mortgagee has standing to initiate a non-judicial foreclosure. *SGK Props., LLC v. U.S. Bank National Association et al.*, 881 F. 3d 933, 491 (5th Cir. 2018) (citing Tex. Prop. Code §§ 51.002, 51.0025). A mortgagee includes the last person to whom the security interest has been assigned of record. *Id.* (citing Tex. Prop. Code §§ 51.0001(4)). The summary judgment record shows the Deed of Trust was assigned to USBNA from Home123, the original holder. Dkt. 32-1 at 46-48. Because USBNA is the final assignee in a complete chain of assignment, USBNA has the authority to foreclose as a mortgagee. *See* Tex. Prop. Code § 51.0001(4)(c) (including "the last person to whom the security interest has been assigned of record" in the definition of a "mortgagee"); *see also Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 828-29 (S.D. Tex. 2012) (citations omitted) (explaining a mortgagee has standing to initiate a non-judicial foreclosure sale). Texas law also allows a mortgage servicer to administer a foreclosure on behalf of the mortgagee. Tex. Prop. Code § 51.0025. A mortgage servicer is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* It is undisputed that PHH serves as the current mortgage servicer. Dkt. 32-1 at 46-48.

Finally, the summary judgment record establishes Lamell has received all pre-foreclosure notices required by Texas law and the Deed of Trust at this juncture. Texas Property Code § 51.002(d) requires a mortgage servicer serve the debtor with written notice by certified mail stating the note is in default and providing at least 20 days to cure the default before a notice of sale can be given. Tex. Prop. Code ¶ 51.002(d). The Deed of Trust requires Lamell be given 30 days'

notice to cure a default. Dkt. 32-1 at 14. According to the summary judgment record, a Notice of Intent to Foreclose was sent to Lamell mailed via certified mail[7] on July 2, 2019 at the address of the Property. *Id*. at 113-14. The Notice specified the amount needed to cure default ($644,361.39) and afforded Lamell 35 days to cure, a period in excess of the requirements of § 51.002(d) and the Note. *Id*. The Notice also advised Lamell that the loan would be accelerated if he failed to timely cure the default. *Id*. Lamell was then notified on August 20, 2019 that the loan was being accelerated. *Id*. at 118. Therefore, USBNA and PHH have presented summary judgment evidence demonstrating that the notice required under § 51.002(d) and the Deed of Trust has been given.[8]

As noted in Section B above, the Court finds Lamell's statute of limitations defense is barred by res judicata and does not preclude foreclosure. Because the statute of limitations does not preclude foreclosure and because PHH and USBNA have presented summary judgment evidence showing they are entitled to pursue a non-judicial foreclosure of the Property, the Court finds they are entitled to pursue that remedy. However, in doing so, they remain obligated to comply with all notice[9] and procedural requirements under Texas law as well as the foreclosure procedure outlined in the Deed of Trust.

---

[7] Service of a notice by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. TEX. PROP. CODE ʃ 51.002(e). An affidavit written by a person knowledgeable of the relevant facts, which states service was completed, is prima facie evidence of service. TEX. PROP. CODE ʃ 51.002(e). Talya Alkins' Affidavit states the Notice was mailed via certified mail to Lamell at the Property address, which was his last known address. Dkt. 32-1 ʃ 27.

[8] The July 2, 2019 Notice of Intent to Foreclose and August 20, 2019 Notice of Acceleration are the most recent notices of default and acceleration. However, a prior Notice of Default was mailed to Lamell on April 8, 2010 Notices of Acceleration were sent to Lamell on June 4, 2010, July 12, 2010, August 15, 2011, February 13, 2012, May 8, 2012, and February 8, 2013. Dkt. 32-2 at 54-56; Dkt. 57-3 at 27-30, 32-34; Dkt. 57-4 at 2-4, 12-14, 21-23. .

[9] Texas law requires a second pre-foreclosure notice be given notifying the debtor of a scheduled foreclosure sale 21 days in advance. TEX. PROP. CODE § 51.002(b).

**D.  PHH and USBNA have presented summary judgment evidence demonstrating they are entitled a declaratory judgment on the claims for equitable and contractual subrogation.**

PHH and USBNA argue they are entitled to foreclose on the property by invoking the doctrine of contractual or equitable subrogation.  Dkt. 32 at 36-38.  Contractual subrogation exists under Texas law when "a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an agreement that such person shall stand in the place of the original holder of the indebtedness."  *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002) (quotations omitted).  In such cases, the lender is entitled to reimbursement to the extent its payments operated to discharge the original liens.  *Id.* (citing *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 662 (Tex. 1992)).  Contractual subrogation exists where each lender in a "chain of financings" advanced money to extinguish prior amounts owed and executed a deed of trust on the property.  *Id.*

Equitable subrogation is a "legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of the third person, so that by means of it one creditor is substituted to the rights, remedies and securities of another."  *Bank of America v. Babu*, 340 S.W.3d 917, 925 (Tex. App. 2008) (quotations omitted).  The general purpose of equitable subrogation is to prevent the unjust enrichment of a debtor whose debt has been paid by someone who was not a "volunteer" to do so.  *Id.* at 925 (citations omitted).  A "volunteer" in this context is a person "who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own."  *Murray v. Cadle Co.*, 257 S.W.3d 291, 300.  Texas courts have given the equitable subrogation doctrine a "liberal application . . . broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter."  *Babu*, 340 S.W.3d at 925.  Therefore,

there are two "key elements" to equitable subrogation: (1) the person whose debt was paid was primarily liable on the debt and (2) the claimant paid the debt involuntarily. *Id*. Whether a party is entitled to equitable subrogation ultimately depends on the specific facts of each case. *Id*. The Court must blance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. *Id*. at 926.

In this case, the Deed of Trust executed by Home123 and Lamell, along with the accompanying Renewal and Extension Exhibit, show Home123 advanced funds used to discharge existing liens held on the property. For example, the Renewal and Extension Exhibit to the Deed of Trust identifies four pre-existing liens on the Property totaling $520,000.00. Dkt. 32-1 at 35. With respect to those pre-existing liens, the Renewal and Extension Exhibit states

> [t]he [pre-existing liens] are expressly acknowledged by [Lamell] as valid and subsisting liens against the property . . .; it is expressly agreed that said liens are hereby renewed, extended, and carried forward in full force and effect to secure the payment of the Note secured hereby and the holder hereof is subrogated to all the rights, powers, and equities of the original owners and holders of the prior promissory note . . . .

*Id*. The Deed of Trust also addresses subrogation, stating

> [a]ny of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request . . . . Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder or any outstanding liens and debts . . . .

*Id*. at 32. Therefore, with respect to contractual subrogation, PHH and USBNA have produced uncontroverted summary judgment evidence demonstrating Home123 advanced funds to discharge existing liens on the Property, Lamell and Home123 executed a Deed of Trust to that effect, and the Deed of Trust was then assigned to USBNA.

As for equitable subrogation, PHH and USBNA have clearly offered evidence in satisfaction of the two elements of equitable subrogation. First, the Extension and Renewal Exhibit

to the Deed of Trust shows Home123 paid off the pre-existing debts that were owed by Lamell. *Id*. at 35.  Second, the Deed of Trust states the funds advanced by Home123 were advanced "at [Lamell's] request and upon [his] representation that such amounts are due and secured by valid liens against the Property[,]" thereby showing the existing liens were not paid off voluntarily but were paid at the request of Lamell pursuant to an agreement for subrogation.  *Id*. at 32; *see Murray*, 257 S.W.3d at 301 (finding pre-existing loans were paid off involuntarily by a lender where the loans were paid at the request of the debtor); *Langston v. GMAC Mortg. Corp.*, 183 S.W.3d 479, 481 (Tex. App.—Eastland 2005) (explaining a lender does not voluntarily pay the debt owed to another where it does so at the request of the debtor and subject to a subrogation agreement).

The balancing of equities further suggests PHH and USBNA are entitled to equitable subrogation.  "The general purpose of equitable subrogation is 'to prevent the unjust enrichment of the *debtor* who owed the debt that is paid.'"  *Babu*, 340 S.W.3d at 926 (quotations omitted) (emphasis in original).  "[T]he requirement of unjust enrichment to the debtor . . . is met by showing the debt owed by the debtor was paid involuntarily by the party seeking equitable subrogation."  *Id*. at 927.  Given that Home123 involuntarily paid the existing liens off on behalf of Lamell pursuant to an agreement for subrogation, Lamell has been unjustly enriched at Home123's expense.  *See de la Cruz v. Bank of New York as Tr. of Certificateholders CWABS, Inc., Asset-Backed Certificates Series 2005-9*, No. A-17-CV-00163-SS, 2019 WL 7761446, at *7 (W.D. Tex. Nov. 8, 2019) ("The equities on [the lender's] side are straight-forward.  Because [the debtor] has failed to reimburse [the lender] for the debt it discharged on its behalf, [the debtor] has been unjustly enriched at [the lender's] expense.").

Further, Lamell has failed to produce any summary judgment disputing the validity of the Renewal and Extension Exhibit and PHH's and USBNA's summary judgment evidence that the

proceeds of the Note were used to satisfy the underlying liens.  Therefore, Lamell has failed to raise a material issue of fact regarding PHH's and USBNA's right to equitable and contractual subrogation in the total amount of the debt owed on the pre-existing liens that was paid by Home123.

**E.  PHH and USBNA have presented summary judgment evidence demonstrating they are entitled to a declaratory judgment stating the Deed of Trust precludes Lamell from deferring payment of property taxes and allows them to pay the taxes on his account.**

USBNA and PHH seek a declaration that the Deed of Trust precludes Lamell from deferring payment of property taxes under the Texas Tax Code and PHH and USBNA are entitled to pay the property taxes on his behalf even if Lamell exercises the option to defer them after age 65.  Texas Property Tax Code § 33.06 allows individuals over 65 to defer collection of property taxes.  TEX. TAX CODE § 33.06(a)(1)(A).  During the state court proceedings, Lamell challenged the advancement of delinquent property taxes by Home123 (the lender and holder of the note at the time) because Lamell elected to defer payment of his taxes under the Texas Tax Code.

Even though Lamell has a statutory right to defer payment of property taxes under § 33.06, that right does not excuse his obligations under the Deed of Trust.  *See Son v. Wells Fargo Bank, NA*, 1:18-CV-488-RP, 2019 WL 317251, at \*2 (W.D. Tex. Jan. 24, 2019) (citations omitted) (citing *Lyles v. Deutsche Bank Nat. Tr. Co.*, CIV.A. G-09-300, 2011 WL 96591, at \*3 (S.D. Tex. Jan. 11, 2011)) ("A statutory right to deferment does not excuse a mortgagor's obligations under a deed of trust.").  The Deed of Trust specifically states, "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights [protecting its interest in the property under the security interest] and pay such amount and Borrower shall then be obligated . . . to repay to Lender any such amount."  Dkt. 32-1 at 23.  Lamell signed a Waiver of Escrow agreement concurrently with the

Note and Deed of Trust on September 25, 2006.  *Id*. at 40.  The Waiver provides that USBNA has the right to establish an escrow account in the event Lamell fails to pay escrow items, including real estate taxes, in a timely manner or otherwise is in default under the terms of the Loan.  *Id*.

## IV. CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** PHH's and USBNA's Motion for Summary Judgment be **GRANTED** with respect to their claims for declaratory judgment that (1) res judicata bars Lamell's statute of limitations defense; (2) they are entitled to pay taxes on the Property; (3) they are entitled to pursue non-judicial foreclosure; and (4) they are entitled to equitable and contractual subrogation based on the use of the Note proceeds to pay all prior amounts owed on the Property.  The Court further **RECOMMENDS** the Motion be **DENIED** with respect to PHH's and USBNA's request for declaratory judgment that the pre-2019 notices of acceleration were abandoned.  This Amended Memorandum and Recommendation differs from the previous Memorandum and Recommendation (Dkt. 82) only with respect to Section IV.C. regarding PHH's and USBNA's entitlement to non-judicial foreclosure.  This Court signed an Order extending the deadline for Lamell to file objections to Dkt. 82 until  February 15, 2021.  Lamell is entitled to file objections to the Amended Memorandum and Recommendation within fourteen days, or February 18, 2021.  Therefore, the deadline for Lamell to file all objections to this Amended Memorandum & Recommendation is February 18, 2021.  There will be no further extension of the objection period.

Signed on February 4, 2021 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge