United States District Court
Southern District of Texas
**ENTERED**
January 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for CSMC MORTGAGE-BACKED TRUST 2007-3, and PHH MORTGAGE CORPORATION, Individually and as Successor-in-Interest to OCWEN LOAN SERVICING, LLC, §§§§§§§ | |
| Plaintiffs, § | CIVIL ACTION NO. H-19-2402 |
| § | |
| v. § | |
| § | |
| JOSEF M. LAMELL a/k/a J. M. ARPAD LAMELL, §§§ | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

U.S. Bank National Association ("U.S. Bank") and PHH Mortgage Corporation ("PHH") (collectively, "Plaintiffs") brought this action against Josef M. Lamell ("Defendant").[1]  Plaintiffs seek declaratory judgments including a declaration that the statute of limitations does not bar them from foreclosing on Defendant's property.[2]  In December of 2024 the court held a two-day bench

---

[1]Plaintiffs' Second Amended Complaint, Docket Entry No. 164, p. 1.  All page numbers reference the pagination printed at the top of the page by the court's Electronic Case Filing system.

[2]Id. at 7 ¶ 28.  The property at issue is a residence located at 5131 Glenmeadow Drive, Houston, Texas 77096 ("the Property").  Id. at 2 ¶ 4.  For the Property's plat description, see page 2 ¶ 4 of Plaintiffs' Second Amended Complaint, Docket Entry No. 164.

trial.   This Memorandum Opinion and Order addresses all claims raised by the parties.

## I.   **The Parties and Claims**

U.S. Bank is the current owner of a Note and a Deed of Trust executed by Defendant, and PHH services Defendant's mortgage on U.S. Bank's behalf.[3]   Plaintiffs' Second Amended Complaint alleges five claims: (1) a declaratory judgment claim that the "Statute of Limitations does not bar Plaintiffs from foreclosing on the Property or collecting on the Note[;]"[4] (2) a declaratory judgment claim that "Plaintiffs had and have the right to pay taxes on the Property and that Defendant is not entitled to deferral of payment of his property taxes under the terms of the Note and Deed of Trust[;]"[5] (3) a claim for "an order confirming that [Plaintiffs] may foreclose . . ., or alternatively, a judgment for judicial foreclosure[;]"[6] (4) "contractual subrogation" of property taxes advanced by Plaintiffs;[7] and, in the alternative, (5) "equitable subrogation" for said taxes.[8]   The court previously entered a summary judgment holding that Plaintiffs are entitled to pay

---

[3]Joint Pretrial Order, Docket Entry No. 186, p. 4 ¶ 7, p. 5 ¶ 19.

[4]Second Amended Complaint, Docket Entry No. 164, p. 7 ¶ 28.

[5]Id. at 9 ¶ 37.

[6]Id. at 11 ¶ 44.

[7]Id. at 12 ¶ 49.

[8]Id. ¶ 52.

-2-

taxes on the Property.[9]   Defendant alleges four claims for

declaratory judgment:

    a.    That the Court DECLARE that the 6-year Statute of
    Limitations period for bringing a claim or suit to
    enforce collection on the Note has expired.

    b.    That the Court DECLARE that the enforcement/
    foreclosure provisions of the Deed of Trust and the Deed
    of Trust lien itself are VOID.

    c.    That the Court DECLARE that Plaintiffs have no
    authority to foreclose against Lamell's property or to
    bring a suit or a claim to enforce collection on the
    Note.

    d.    That the Court DECLARE that Plaintiffs are
    permanently barred from bringing any suit or claim to
    enforce collection on the Note.[10]

Defendant also alleges a claim for "Release of Deed of Trust Lien,"

asking "that the Court ORDER Plaintiffs to file a release of lien

in the public records of Harris County."[11]

## II.  **Legal Standard**

    "It is the function of the district court at bench trial to

listen to the testimony of each witness, weigh his or her

---

[9]Order Adopting Amended Memorandum and Recommendation, Docket Entry No. 99; Final Judgment, Docket Entry No. 100.   This part of the court's order was not addressed by the Fifth Circuit on appeal. See Opinion, Docket Entry No. 125, pp. 15-16.

[10]Defendant's Answer to Second Amended Complaint and Counterclaims ("Defendant's Live Answer"), Docket Entry No. 168, pp. 13-14.

[11]Id. at 15.   Defendant's Live Answer also alleged claims under the Texas Debt Collection Practices Act, the Texas Deceptive Trade Practices Act, and claims involving insurance funds connected to the Property, but they were stricken by the court.   Id. at 11-14; Memorandum and Recommendation, Docket Entry No. 171, p. 16; Order Adopting Memorandum and Recommendation, Docket Entry No. 181.

credibility, and make factual findings." <u>Garr v. Western Sizzler,</u>

273 F.3d 1108 (5th Cir. 2001) (per curiam).

"[T]he court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." <u>Id.</u> "The court need only make brief, definite, and pertinent findings and conclusions upon contested matters." 9C Wright & Miller, Federal Practice & Procedure § 2579 (3d ed. 2008). "It need not make findings on stipulated or undisputed facts, although it may have to make a finding if conflicting inferences can be drawn from the undisputed facts." <u>Id.</u>

### III.  <u>Findings of Fact</u>

After carefully considering the evidence, the relevant authorities, and the parties arguments, the court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

On September 25, 2006, Defendant took out a loan from Home123 Corporation ("Home123") to pay off other liens on the Property.[12] Defendant signed a Deed of Trust granting Home123 a lien on the

---

[12]InterestFirst Note (the "Note"), Plaintiffs' Exhibit 1, p. 1; Transcript of Trial Day 1 ("Trial Day 1 Transcript"), Docket Entry No. 213, p. 9 lines 4-9; Joint Pretrial Order, Docket Entry No. 186, p. 3 ¶ 6.1.

Property as security for the Note.[13]    The Deed of Trust has an
optional acceleration clause, which states:

> 22. Acceleration; Remedies. Lender shall give notice to
> Borrower prior to acceleration following Borrower's
> breach . . . The notice shall specify:  (a) the default;
> (b) the action required to cure the default; (c) a date
> . . . by which the default must be cured; and (d) that
> failure to cure the default on or before the date
> specified in the notice will result in acceleration of
> the sums secured by this Security Instrument and sale of
> the Property. . . . If the default is not cured on or
> before the date specified in the notice, Lender at its
> option may require immediate payment in full of all sums
> secured by this Security Instrument without further
> demand and may invoke the power of sale . . . Lender
> shall be entitled to collect all expenses incurred in
> pursuing the remedies provided in this Section 22,
> including . . . reasonable attorneys' fees . . .[14]

Relevant to contractual subrogation, the Deed of Trust states:

> **9. Protection of Lender's Interest in the Property and
> Rights Under this Security Instrument.**  If (a) Borrower
> fails to perform the covenants and agreements contained
> in this Security Instrument . . . then Lender may do and
> pay for whatever is reasonable or appropriate to protect
> Lender's interest in the Property and rights under this
> Security Instrument . . . Lender's actions can include
> . . . (a) paying any sums secured by a lien which has
> priority over this Security Instrument . . .
>
> Any amounts disbursed by Lender under this Section 9
> shall become additional debt of Borrower secured by this
> Security Instrument.[15]

Defendant signed a "Waiver of Escrow," in which he "agree[d]
to be solely responsible for the timely payment of any and all

---

[13]Deed of Trust, Plaintiffs' Exhibit 2, pp. 3, 15; Trial Day 1
Transcript, Docket Entry No. 213, p. 10 lines 7-15; Joint Pretrial
Order, Docket Entry No. 186, p. 4 ¶ 6.3.

[14]Deed of Trust, Plaintiffs' Exhibit 2, p. 13; Joint Pretrial
Order, Docket Entry No. 186, p. 4 ¶ 10.

[15]Deed of Trust, Plaintiffs' Exhibit 2, pp. 7-8.

property taxes[.]"[16]  The Waiver of Escrow states that "Lender shall have the right to establish or reestablish an escrow account for the payment of the Escrow Items . . . in the event that . . . 1. Borrower(s) fail(s) to pay any of the Escrow Items in a prompt and timely manner[.]"[17]

On June 29, 2010, Home123 executed an Assignment of Mortgage "[e]ffective as of April 11, 2010[,]" assigning the Deed of Trust to U.S. BANK.[18]

In 2010 IndyMac Mortgage Services, a Division of OneWest Bank ("OneWest") serviced Defendant's mortgage on behalf of U.S. Bank.[19]

A dispute arose regarding payment of property taxes early in 2010.  Defendant states that he protested the Property's tax appraisal and, as permitted by law, paid only the taxes on the undisputed portion of the Property's value while the protest was being resolved.[20]  According to Defendant, the Harris County Tax Assessor incorrectly reported the unpaid taxes to OneWest as a tax

---

[16]Waiver of Escrow, Plaintiffs' Exhibit 3; Trial Day 1 Transcript, Docket Entry No. 213, p. 35 lines 21-24, p. 36 lines 8-9.

[17]Waiver of Escrow, Plaintiffs' Exhibit 3.

[18]Assignment of Mortgage, Plaintiffs' Exhibit 5, pp. 1-2; Trial Day 1 Transcript, Docket Entry No. 213, p. 11 lines 13-19.

[19]See Notice of Default, Plaintiffs' Exhibit 6, p. 2; Trial Day 1 Transcript, Docket Entry No. 213, p. 18 lines 22-25, p. 19 lines 1-2.

[20]Transcript of Trial Day 2 ("Trial Day 2 Transcript"), Docket Entry No. 215, p. 39 lines 11-17.

delinquency.[21]  On February 22, 2010, Defendant filed an action in state court against various Harris County entities and officials based on the allegedly improper reporting of disputed taxes.[22]

Benjamin Verdooren, a senior loan analyst employed by PHH's parent company,[23] testified that because a Texas property tax lien is senior to a deed of trust, mortgage servicers want to avoid tax liens.[24]  OneWest paid the reported tax deficiency and established a tax escrow account for Defendant.[25]  Defendant argued to OneWest that the taxes were not due and ultimately amended his state court action to add OneWest as a defendant.[26]

In February of 2010 Defendant stopped making his mortgage payments.[27]  On April 8, 2010, OneWest sent Defendant a notice of default stating that he had failed to make payments totaling $14,219.59 plus late fees and that the Note would be accelerated if

---

[21]Id. lines 17-24.

[22]See Plaintiff's Original 2009 Petition, Plaintiffs' Exhibit 26, pp. 19-20; Trial Day 2 Transcript, Docket Entry No. 215, p. 40 lines 3-6.

[23]Trial Day 1 Transcript, Docket Entry No. 213, p. 7 lines 10-15, 20-24, p. 8 lines 11-13.

[24]Id. at 39 line 25, p. 40 lines 1-12, p. 41 lines 2-6.

[25]Id. at 40 lines 20-22, p. 41 lines 7-13.

[26]March 30, 2010, Letter, Defendant's Exhibit 26, p. 2; Plaintiff's Amended 2009 Petition, Plaintiffs' Exhibit 27, p. 1.

[27]Notice of Default, Plaintiffs' Exhibit 6, p. 2; Trial Day 1 Transcript, Docket Entry No. 213, p. 10 lines 21-25, p. 11 lines 11-12.

he failed to cure the default.[28]  On June 4, 2010, U.S. Bank's attorneys sent Defendant a Notice of Acceleration, stating that it "hereby accelerates the maturity of your loan, and declares the entire balance of the loan due and payable without further demand[.]"[29]

On October 16, 2013, OneWest sent Defendant a Notice of Servicing Transfer (RESPA) and Welcome to Ocwen Loan Servicing, LLC ("OneWest-Ocwen Transfer Letter"), stating:

> Effective 11/01/2013, [OneWest] will transfer the servicing of your mortgage loan to Ocwen Loan Servicing, LLC (Ocwen).  The transfer of the servicing of your loan does not affect any term or condition of your mortgage contract, other than terms directly related to the servicing of your account.[30]

From January through April of 2014 Ocwen sent four Mortgage Account Statements to Defendant.  The statements list a "Principal Balance" of $566,000.00, a maturity date of October 1, 2036, and a "Total Amount Due" ranging from $407,963.05 due on February 1, 2014, to $441,940.99 due on May 1, 2014.[31]  Each one states:  "Our

---

[28]Notice of Default, Plaintiffs' Exhibit 6, p. 2; Trial Day 1 Transcript, Docket Entry No. 213, p. 18 lines 22-25, p. 19 lines 1-2.

[29]Notice of Acceleration and Enclosing Notice of Substitute Trustee's Sale ("Notice of Acceleration"), Defendant's Exhibit 12, p. 2 ¶ 1; Trial Day 1 Transcript, Docket Entry No. 213, p. 19 lines 14-18.

[30]OneWest-Ocwen Transfer Letter, Plaintiffs' Exhibit 8, p. 1; Trial Day 1 Transcript, Docket Entry No. 213, p. 12 lines 9-15.

[31]Mortgage Account Statement, Plaintiffs' Exhibit 9, p. 1; Mortgage Account Statement, Plaintiffs' Exhibit 12; Mortgage (continued...)

-8-

records indicate that your loan is in foreclosure.  Accordingly, this statement may be for informational purposes only."[32]

On January 22 and February 10, 2014, Ocwen sent Defendant Mortgage Assistance Resources letters ("MAR Letters").[33]  The MAR Letters state:

> We are pleased to assist you in identifying solutions for your mortgage. . . .
>
> **1. Schedule time with your Relationship Manager**
>
> * * *
>
> **2. Send us your Application materials**
> Please continue to email any application documents . . . to your Relationship Manager . . .
>
> * * *
>
> **Important Information About Foreclosure**
>
> We will review your <u>fully complete application</u> for assistance, including all completed forms and financial documents, even if a foreclosure sale date is scheduled within 30 days. . . .
>
> * * *

---

[31] (...continued)
Account Statement, Plaintiffs' Exhibit 13; Mortgage Account Statement, Plaintiffs' Exhibit 14, p. 1; Trial Day 1 Transcript, Docket Entry No. 213, p. 22 lines 6-14, 22-25; p. 23 lines 1, 5-9, 17-25; p. 24 line 1.

[32] Mortgage Account Statement, Plaintiffs' Exhibit 9, p. 1; Mortgage Account Statement, Plaintiffs' Exhibit 12; Mortgage Account Statement, Plaintiffs' Exhibit 13; Mortgage Account Statement, Plaintiffs' Exhibit 14, p. 1.

[33] MAR Letter, Plaintiffs' Exhibit 10, p. 1; MAR Letter, Plaintiffs' Exhibit 11, p. 1; Trial Day 1 Transcript, Docket Entry No. 213, p. 24 lines 12-20.

## ALTERNATIVES TO FORECLOSURE

> No matter what your situation, you may have options.  We
> offer multiple solutions to help you through difficult
> times, including, but not limited to, the Home Affordable
> Modification Program (HAMP) . . . We also offer our own
> modification options and foreclosure alternatives.[34]

Defendant applied for a loan modification, but the parties never
reached an agreement.[35]

Plaintiffs introduced a document associated with the Note
titled "Comments," an internal record in which loan activity is
logged.[36]  An entry dated August 1, 2014, states that "[t]he loan
has been de-accelerated for purposes of displaying the amount due
on the periodic account statement.  The foreclosure process on the
loan has stopped or been reset."[37]  Mr. Verdooren testified that the
Comments are not communicated to the borrower.[38]

"Effective as of August 3, 2015," OneWest was merged into CIT
Bank, N.A ("CIT").[39]  On April 9, 2019, Defendant filed an amended

---

[34]MAR Letter, Plaintiffs' Exhibit 10, pp. 1-3; MAR Letter,
Plaintiffs' Exhibit 11, pp. 1-3.

[35]See Joint Pretrial Order, Docket entry No. 186, p. 5 ¶ 6.17.

[36]Comments, Plaintiffs' Exhibit 56; Trial Day 1 Transcript,
Docket Entry No. 213, p. 28 lines 20-25, p. 29 lines 1-3, p. 30
lines 11-19.

[37]Comments, Plaintiffs' Exhibit 56; Trial Day 1 Transcript,
Docket Entry No. 213, p. 29 lines 24-25, p. 30 lines 1-4.

[38]Trial Day 1 Transcript, Docket Entry No. 213, p. 30
lines 16-19.

[39]Form 8-K/A, Plaintiffs' Exhibit 21, p. 2; Trial Day 1
Transcript, Docket Entry No. 213, p. 16 lines 11-18.

pleading in the state court action, alleging a declaratory judgment

claim regarding the foreclosure statute of limitations:

> 10. Lamell now raises the expiration of limitations in defense against pending and possible future foreclosure or collection actions related to his loan being continually in foreclosure. Accordingly, he seeks specific declarations that limitations have gone beyond statutory limits as to each of the foreclosure or collection actions that had formerly been available to CIT.[40]

On May 16, 2019, Defendant and CIT executed a Settlement

Agreement and Mutual Release of All Claim (the "CIT Settlement").[41]

The settlement states in relevant part:

> 1.1 . . . [Defendant] completely RELEASES AND FOREVER DISCHARGES [CIT] and its past and present agents, servants, employees, officers, directors, shareholders and representatives, along with all related companies, including any parent, subsidiaries, affiliates, as well as any predecessors in interest, including without limitation IndyMac Federal Bank, FSB (collectively, the "CIT Released Parties") from any and all past, present, or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of services, expenses and compensation of any nature whatsoever, whether based in statute, in tort, on a contract, a statutory or non-statutory lien, or on other theory of recovery, related to or arising out of any and all claims which were brought or could have been brought by [Defendant] in connection with the Dispute or the Lawsuit for any and all compensatory, punitive, or statutory damages which [Defendant] now has, which may hereafter accrue, or which may be otherwise acquired, on account of or in any way connected to, related to, or arising out of the Dispute or the Lawsuit . . . This Settlement Agreement shall be a fully binding, enforceable, and complete and unconditional settlement, release, and compromise between [Defendant] and [CIT] regarding all of

---

[40]Plaintiff's Third Supplement to Plaintiff's Supplemental Petition, Plaintiffs' Exhibit 29, p. 4.

[41]CIT Settlement, Plaintiffs' Exhibit 31, p. 1.

[Defendant]'s claims arising out of the Dispute, the Lawsuit, and the Released Claims.

\* \* \*

6.2  The Settlement Agreement shall be binding upon and shall inure to the benefit of the executors, administrators, personal representatives, heirs, insurers, successors, and assigns of each of the parties hereto.

\* \* \*

## IX.   CONSTRUCTION OF AGREEMENT

It is intended that this Settlement Agreement shall be comprehensive in nature and shall be construed liberally to effect its purpose. . . .[42]

On April 11, 2019, Ocwen notified Defendant that it had combined with PHH and that "[e]ffective 5/1/2019, PHH will be the new servicer for this account and will be collecting the mortgage payments going forward."[43] On July 2, 2019, PHH sent Defendant a Notice of Intention to Foreclose, which notified Defendant that he was in default for failing to make mortgage payments since February 1, 2010, that Defendant had to pay $644,361.39 to cure the default, and that "[f]ailure to cure the default by 08/06/2019 will result in acceleration of the sums secured by the Security Instrument and sale of the property."[44]   On August 20, 2019,

---

[42]Id. at 2-3, 5-7 (emphasis added).

[43]April 11, 2019, Correspondence, Plaintiffs' Exhibit 15, p. 1; see also Agreement and Plan of Merger, Plaintiffs' Exhibit 24; Trial Day 1 Transcript, Docket Entry No. 213, p. 17 lines 11-25, p. 18 lines 1-2.

[44]Notice of Intention to Foreclose, Plaintiffs' Exhibit 16, pp. 1-2; Trial Day 1 Transcript, Docket Entry No. 213, p. 32 line 25, p. 33 lines 1-2, 10-12.

Plaintiffs' attorneys sent Defendant a Notice of Acceleration of Loan Maturity, which states that "the maturity date of the Note was accelerated effective 08/20/2019" and that "[a]ll unpaid principal and accrued interest on the Note are due and payable at this time."[45]

## IV.  Analysis

### A.  Plaintiffs' Claim for Declaratory Judgment on Limitations

The evidence establishes that the Note was accelerated on June 4, 2010, and that foreclosure did not occur within four years. Plaintiffs argue that the statute of limitations does not bar foreclosure, however, because (1) they reset the limitations period by abandoning acceleration, (2) the statute of limitations was tolled during the state court action, and (3) Defendant released his limitations defense in the CIT Settlement.[46]

Texas Civil Practice & Remedies Code § 16.035(b) states that "[a] sale of real property under a . . . deed of trust that creates a real property lien must be made not later than four years after the day the [foreclosure] cause of action accrues."[47]  "Generally, the [foreclosure] accrual date is the maturity date of the loan."

---

[45]Notice of Acceleration of Loan Maturity ("2019 Acceleration Notice"), Plaintiffs' Exhibit 17; Trial Day 1 Transcript, Docket Entry No. 213, p. 35 lines 7-20.

[46]Plaintiffs' Second Amended Complaint, Docket Entry No. 164, p. 7 ¶ 30, p. 8 ¶¶ 31-32; Plaintiffs' Memorandum of Law for Trial ("Plaintiffs' Trial Brief"), Docket Entry No. 185, pp. 2-6, 12.

[47]When this period expires the lien becomes void.  Id. § 16.035(d).

Moore v. Wells Fargo Bank, N.A. as trustee for MASTR Asset Backed Securities Trust 2004-OPT2, Mortgage Pass-Through Certificates, 685 S.W.3d 843, 846 (Tex. 2024) (citing Tex. Civ. Prac. & Rem. Code § 16.035(e)). But loans "often also contain acceleration clauses that permit the lender to accelerate the loan upon the borrower's default." Id. "When a lender chooses to accelerate, the cause of action for foreclosure of the lien accrues at the time of acceleration." Id. (citing Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001)).[48]

"Not all accelerations are carried through to foreclosure. A lender may abandon or rescind acceleration of the note, restore the original maturity date, and reset the limitations period, thus giving the borrower an opportunity to cure the default." Id.[49]

### 1.  Abandonment of Acceleration

In their Trial Brief and at trial Plaintiffs argued that they abandoned the 2011 acceleration in five ways:  (1) requesting, in the Mortgage Account Statements, payment on less than the full amount of the loan; (2) cancelling a scheduled foreclosure sale; (3) changing mortgage servicers after acceleration; (4) sending the

---

[48]See also HSBC Bank USA, N.A. as Trustee for Merrill Lynch Mortgage Loan v. Crum, 907 F.3d 199, 203 (5th Cir. 2018).

[49]See also Boren v. U.S. National Bank Association, 807 F.3d 99, 104 (5th Cir. 2015) (An acceleration may be abandoned, "'restoring the contract to its original condition,' thereby 'restoring the note's original maturity date' for purposes of [foreclosure] accrual.").

MAR Letters to Defendant; and (5) by logging in the Note's Comments that the loan was de-accelerated.

"[A]cceleration can be abandoned by agreement or other action of the parties." <u>Khan v. GBAK Properties, Inc.</u>, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012).[50]   "'Texas courts have framed the issue of abandonment of acceleration by reference to traditional principles of waiver.'" <u>DeFranceschi v. Seterus, Inc.</u>, 731 F. App'x 309, 311 (5th Cir. 2018) (quoting <u>Boren</u>, 807 F.3d at 105). Under Texas law "'[t]he elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." <u>Thompson v. Bank of America National Association</u>, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting <u>Ulico Casualty Co. v. Allied Pilots Association</u>, 262 S.W.3d 773, 778 (Tex. 2008)).

"Intent [to abandon] is the critical element, and its manifestation must be unequivocal." <u>Swoboda v. Ocwen Loan Servicing, LLC</u>, 579 S.W.3d 628, 633 (Tex. App.—Houston [14th Dist.] 2019); <u>see also Colbert v. Wells Fargo Bank, N.A.</u>, 850 F. App'x 870, 875 (5th Cir. 2021) (per curiam) ("the request for payment must have demonstrated an 'unequivocal manifestation' of Wells Fargo's intent to no longer accelerate the loan").

---

[50]<u>Boren</u>, 807 F.3d at 104 (same).

-15-

The party asserting the affirmative defense of limitations has the burden of proving the elements of the defense, including the date the cause of action accrued.  Holland v. Lovelace, 352 S.W.3d 777, 788 (Tex. App.—Dallas 2011).  But a mortgagee contesting limitations on the basis that it abandoned acceleration has the burden of proving abandonment.  See Swoboda, 579 S.W.3d at 637 ("the Bank did not carry its burden of proving abandonment").

"Waiver is a question of law when the facts that are relevant to a party's relinquishment of an existing right are undisputed." Boren, 807 F.3d at 106.[51]

a.    The Mortgage Account Statements

Some opinions have stated that a "request for payment of less than the full [loan] obligation—after initially accelerating the entire obligation—[is] an unequivocal expression of the bank's intent to abandon or waive its initial acceleration." Jatera Corp. v. US Bank National Association as Trustee for Registered Holders of Citigroup Mortgage Loan Trust, 917 F.3d 831, 835 (5th Cir. 2019)

---

[51]See also G.T. Leach Builders, LLC v. Sapphire V.P., LP, 458 S.W.3d 502, 511 (Tex. 2015) ("When, as here, the relevant facts are undisputed, whether a party waived its right to arbitrate is a question of law."); Florey v. U.S. Bank National Association, Trustee for RMAC Trust, Series 2016-CCT, No. 05-20-00306, 2021 WL 2525457, at *4 (Tex. App.—Dallas June 21, 2021) ("Whether acceleration has been effectively abandoned is a question of law when the relevant facts are undisputed."); Brannick v. Aurora Loan Services, LLC, No. 03-17-00308, 2018 WL 5729104, at *3 (Tex. App.—Austin Nov. 2, 2018) ("Because the contents of the letters are not disputed but only their legal effect, whether [abandonment] occurred is a question of law.").

(quoting <u>Martin v. Federal National Mortgage Association</u>, 814 F.3d 315, 318 (5th Cir. 2016); <u>see also Boren</u>, 807 F.3d at 106 ("A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'") (quoting <u>Leonard v. Ocwen Loan Servicing, L.L.C.</u>, 616 F. App'x 677, 680 (5th Cir. 2015) (per curiam)).

But as the Fifth Circuit stated on appeal in this action, "the [payment] request must 'demonstrate an unequivocal manifestation of [the lender's] intent to no longer accelerate the loan.'" <u>U.S. Bank National Association as trustee for CSMC Mortgage-Backed Trust 2007-3 v. Lamell</u>, No. 21-20326, 2022 WL 1800860, at *6 (5th Cir. June 2, 2022) (per curiam). "The weight of our precedent suggests that monthly statements demanding less than the full amount of a loan are not alone sufficient to constitute abandonment." <u>Id.</u> (collecting cases).

In particular, a request for payment of less than the full accelerated amount is not sufficient if the request states that the loan is in foreclosure. In <u>Bank of New York Mellon Trust Co. National Association v. Meachum</u>, No. 21-10766, 2022 WL 1171059, at *3 (5th Cir. Apr. 20, 2022) (per curiam), the Fifth Circuit held that a monthly statement did not abandon acceleration, reasoning:

> [T]he monthly statements BNYM sent to Meachum stated, "your loan has been referred to an attorney to start foreclosure proceedings" and included the total payment amount required to bring the account current, as required under 12 C.F.R. § 1026.41(d)(8)(vi). The statements also

-17-

> displayed the accelerated amount and stated, "The first
> notice or filing required by applicable law for the
> foreclosure process has been made."   These statements
> demonstrated that BNYM was still proceeding with
> acceleration and foreclosure.

Id.

Ocwen's Mortgage Account Statements include conflicting information.  On the one hand, they state a Total Amount Due less than the full accelerated balance and a Maturity Date in 2036 — both of which are consistent with acceleration being abandoned.[52] But similar to the monthly statements in Meachum, they state that Defendant's loan was "in foreclosure."[53]  Because acceleration is a precondition to foreclosure, this is inconsistent with abandonment.   Ocwen's Mortgage Account Statements from 2014 therefore do not satisfy the "'unequivocal manifestation'" standard and did not abandon acceleration.  Colbert, 850 F. App'x at 875.

### b.   Cancellation of a Scheduled Foreclosure Sale

Plaintiffs' Trial Brief argues that "a noteholder can abandon acceleration by taking a voluntary non-suit in [a judicial foreclosure] action on the note. . . . The same principle — nonsuit of [] an expedited Rule 736 action is abandonment — applies when a mortgage lender stops moving forward on a non-judicial sale."[54]

---

[52]Mortgage Account Statement, Plaintiffs' Exhibit 9, p. 1.

[53]Id.

[54]Plaintiffs' Memorandum of Law for Trial ("Plaintiffs' Trial Brief"), Docket Entry No. 185, p. 2.

Several opinions appear to have held that a creditor abandoned acceleration by bringing an action for judicial foreclosure and then voluntarily non-suiting. See Denbina v. City of Hurst, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974); Costello v. U.S. Bank Trust, N.A. for LSF9 Master Participation Trust, 689 F. App'x 253, 255 (5th Cir. 2017) (per curiam). But Plaintiffs do not cite, and the court has not found, any authority holding that cancellation of a non-judicial foreclosure sale accomplishes abandonment. Absent any authority, the court is not persuaded. A lender might cancel a specific sale date for any number of logistical or other reasons while still planning to pursue foreclosure at a later date.

### c.   Change of Servicer

Plaintiffs argue that U.S. Bank communicated its intent to abandon by changing its servicer after acceleration. Plaintiff cites two opinions for this proposition.

Plaintiff summarizes Leonard, 616 F. App'x 677 as "finding that the new loan servicer abandoned the prior servicer's acceleration when it did not pursue foreclosure but, rather, sought payments of less than the entire balance owed[.]"[55] In Leonard the Fifth Circuit held that a mortgage servicer abandoned an acceleration entered by its predecessor. 616 F. App'x at 680. But the court's holding was based on the latter servicer's communications to the borrower. See id. Nothing in the Fifth

---

[55]Plaintiffs' Trial Brief, Docket Entry No. 185, p. 2.

-19-

Circuit's opinion suggests that the servicer change itself was relevant to abandonment.

In _McDougal v. Trinity Financial Services, LLC_, No. 3:19-CV-2256-E-BK, 2023 WL 3573319, at *3 (N.D. Tex. May 19, 2023), report and recommendation adopted, 2023 WL 3575646 (N.D. Tex. May 19, 2023), the court stated:

> [W]hile MERS accelerated the debt owed under the Deed in 2009, MERS did not foreclose on the Property, and its subsequent assignment of the [deed] to a new loan servicer in 2012 unilaterally abandoned its acceleration of the Deed and, thereby, reset the SOL. _See Bliss [v. Bank of America N.A.]_, No. 05-18-00476-CV], 2019 WL 2353445, at *3 [(Tex. App.—Dallas June 4, 2019)] (finding that abandonment may occur in various forms).

This court respectfully disagrees with _McDougal's_ reading of Texas abandonment law. The court does not understand how a change in servicer implies a change in the status of the underlying mortgage. A borrower has no way of knowing whether the change is based on a new plan for his mortgage or for unrelated business reasons. The servicer changes in this case had nothing to do with the particulars of Defendant's mortgage or U.S. Bank's plan for the mortgage; Ocwen bought the "mortgage servicing rights" for $78 billion worth of mortgages from OneWest.[56] But even if a servicer change could communicate abandonment, the OneWest-Ocwen Transfer Letter disclaims any such intent.[57] The court concludes

---

[56]Form 8-K, Plaintiffs' Exhibit 23, p. 2.

[57]OneWest-Ocwen Transfer Letter, Plaintiffs' Exhibit 8, p. 1 ("The transfer of the servicing of your loan does not affect any term or condition of your mortgage contract, other than terms directly related to the servicing of your account.").

that the change in servicer was not an "'unequivocal manifestation'" of an intent to abandon acceleration. See Colbert, 850 F. App'x at 875.

### d. The MAR Letters

The MAR Letters encouraged Defendant to apply for mortgage assistance, promised that Ocwen "will review" a "fully complete application," and stated that the Defendant "may have options."[58] As the court stated in its summary judgment ruling, "a mere offer of loan modification is more like a 'conditional abandonment' that, standing alone, does not constitute an unequivocal manifestation of intent to abandon the acceleration."[59] The MAR Letters are not offers of modification. They merely invite Defendant to apply for a modification, which Ocwen could accept or reject. The MAR Letters also state that Ocwen "may also continue any pending foreclosure proceedings on the property."[60]

The court is not aware of any authority holding that communications akin to the MAR Letters constitute abandonment. Several opinions have held that similar letters did not constitute abandonment. See Watson v. CitiMortgage, Inc., 530 F. App'x 322, 327 (5th Cir. 2013) (per curiam) ("Although it is evident that

---

[58]MAR Letter, Plaintiffs' Exhibit 10, pp. 1-3; MAR Letter, Plaintiffs' Exhibit 11, pp. 1-3.

[59]Amended Memorandum and Recommendation, Docket Entry No. 86, p. 11.

[60]MAR Letter, Plaintiffs' Exhibit 10, p. 2; MAR Letter, Plaintiffs' Exhibit 11, p. 2.

CitiMortgage repeatedly invited and even encouraged the Watsons to apply for modification and sent several requests for additional documentation, none of its conduct is evidence that CitiMortgage intended to [abandon acceleration].").[61]  The court concludes that the MAR Letters did not abandon acceleration.

e.    The Note's Comments

As Mr. Verdooren testified at trial, the Comments are an internal document and not available to the borrower.  Mr. Verdooren testified that he "did not see any communication to [Defendant] about the abandonment."[62]

The court is not aware of any authority holding that a lender can effectively abandon acceleration without communicating the abandonment to the borrower.  In fact, the court is not aware of any opinion that has even considered a lender's internal records in evaluating abandonment.

To accomplish abandonment "the lender must 'so act <u>as to justify the borrower in believing</u> . . . that the effect of the failure to pay an installment was to be disregarded[.]'"  <u>Swoboda v. Ocwen Loan Servicing, LLC,</u> 579 S.W.3d 628, 636 (Tex. App.—Houston [14th Dist.] 2019) (quoting <u>San Antonio Real Estate</u>

---

[61]<u>See also Morlock, LLC v. Petteway,</u> No. 4:21-CV-03202, 2024 WL 4265811, at *6 (S.D. Tex. Sept. 23, 2024); <u>Penta v. Cenlar Capital Corp.,</u> No. 1:21-CV-01019-LY, 2022 WL 18110067, at *5 (W.D. Tex. Oct. 19, 2022), report and recommendation adopted, 2022 WL 19076402 (W.D. Tex. Nov. 30, 2022).

[62]Trial Day 2 Transcript, Docket Entry No. 215, p. 16 lines 18–25.

Building & Loan Association v. Stewart, 94 Tex. 441, 61 S.W. 386, 389 (Tex. 1901)) (internal brackets omitted).  A lender's "subjective belief [that acceleration has been abandoned] is insufficient by itself to prove abandonment as a matter of law." Id.; see also Boren, 807 F.3d at 106 ("A lender waives its earlier acceleration when it 'puts the debtor on notice of its abandonment . . .'").  The court understands Texas law to judge abandonment of acceleration according to the lender's outward communications and conduct — not internal documents that are unknown to the borrower. Plaintiffs cite no authority to the contrary.  The court concludes that the de-acceleration entry in the Comments did not abandon acceleration.

Having carefully considered Plaintiffs' arguments the court concludes that Plaintiffs and their predecessors did not abandon acceleration of the Note within four years (plus tolling)[63] of the June 4, 2010, acceleration.

2.  Tolling

Defendant acknowledges certain amounts of litigation-related tolling that adds up to 755 days.[64]  But Plaintiffs argue that the

---

[63]As explained below, Defendant acknowledges 755 days of tolling, and the court concludes that no other tolling occurred.

[64]Defendant's Trial Memorandum of Law ("Defendant's Trial Brief"), Docket Entry No. 187, p. 25 n.40.  The record is inconsistent as to how much tolling is agreed upon.  See, e.g., Joint Pretrial Order, Docket Entry No. 186, p. 10 ¶ 6 ("The parties agreed that limitations was tolled for at least 638 days between August 2011 and July 2013.").  But these differences would not change whether the statute of limitations expired.

statute of limitations was tolled for the entirety of the state
court action because a foreclosure sale could not occur. "[T]he
equitable tolling doctrine pauses the limitations clock when 'a
party is prevented from exercising its legal remedy by the pendency
of legal proceedings[.]'" Jorrie v. Bank of New York Mellon Trust
Co., N.A., 740 F. App'x 809, 813 (5th Cir. 2018) (per curiam)
(quoting Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex.
1991)). Called the "legal-impediment rule[,]" the Texas Supreme
Court recently clarified that it tolls the statute of limitations
only "where an injunction prevent[ed] a claimant from bringing" a
claim. Levinson Alcoser Associates, L.P. v. El Pistolon II, Ltd.,
670 S.W.3d 622, 630 (Tex. 2023). The portions of the state court
record introduced at trial showed that injunctions restrained
Plaintiffs from foreclosing for discrete periods,[65] but there is no
evidence that Plaintiffs were restrained from foreclosing for the
entire duration of the action. The court therefore concludes that
the statute of limitations was equitably tolled, at most, for 755
days.

### 3. Release of Defendant's Limitations Defense

Defendant brought a claim against CIT in the prior state-court
action for declaratory judgment that the statute of limitations

---

[65]E.g., Order Denying Plaintiff's Application for Temporary
Injunction, Defendant's Exhibit 21, p. 1 (dissolving the
February 28, 2012, TRO on April 3, 2012). The parties do not
appear to have referenced at trial the documents relevant to some
of the agreed tolling.

-24-

barred foreclosure. Plaintiffs argue that even if Defendant had a statute of limitations defense, he released it in the CIT Settlement. Defendant argues that Plaintiffs waived their release argument, that Plaintiffs are not entitled to enforce the CIT Settlement, and that the CIT Settlement did not cover his limitations defense.

a. Whether Plaintiffs Waived Their Release Argument

Defendant argues that Plaintiffs waived their release argument by not appealing a denial of their motion for summary judgment on that issue.

Plaintiffs' First Amended Complaint (the live complaint at the time of the Final Judgment and appeal) sought declaratory judgment that the statute of limitations did not bar foreclosure.[66] Plaintiffs alleged several bases for declaratory relief, including that Defendant released his limitations defense in the CIT Settlement.[67] Plaintiffs moved for summary judgment on their declaratory judgment claim on multiple grounds, including abandonment of acceleration, release via the CIT Settlement, and res judicata.[68] The court granted summary judgment in Plaintiffs' favor based on res judicata, entered a declaratory judgment that

---

[66]Plaintiffs' First Amended Complaint, Docket Entry No. 18, p. 7 ¶ 29.

[67]Id. at 9 ¶ 33.

[68]Plaintiffs' Motion for Summary Judgment and Brief in Support, Docket Entry No. 32, p. 11.

res judicata barred Defendant's statute of limitations defense, but declined to rule on Plaintiffs' release argument.[69]  Plaintiffs filed a Motion to Amend Judgment, asking the court to hold that acceleration was abandoned and that Defendant released any statute of limitations defense in the CIT Settlement, but the court declined to do so.[70]  The Fifth Circuit reversed the court's holding that res judicata barred Defendant's statute of limitations defense.[71]

Plaintiffs prevailed on their declaratory judgment claim based on their res judicata argument.  Defendant cites no authority that a party, prevailing on summary judgment, must raise on appeal alternative legal theories that the district court declined to address.  Moreover, the issue falls within the broadly worded remand of "the abandonment, foreclosure, and subrogation issues and for further proceedings not inconsistent with this opinion."[72]  The court is not persuaded that Plaintiffs have waived their release argument.

---

[69]Amended Memorandum and Recommendation, Docket Entry No. 86, p. 18 n.6, p. 25; Order Adopting Amended Memorandum and Recommendation, Docket Entry No. 99; Final Judgment, Docket Entry No. 100.

[70]Plaintiffs' Motion to Amend Judgment and Brief in Support, Docket Entry No. 105, p. 8; Memorandum Opinion and Order, Docket Entry No. 118, p. 1.

[71]Opinion, Docket Entry No. 125, p. 16.

[72]Id.

b.    Whether Plaintiffs Are Successors or Assigns of CIT

Plaintiffs were not signatories to the CIT Settlement, but they argue that they are successors or assigns of CIT.  Defendant argues that the dates of assignment and settlement prevent Plaintiffs from enforcing the CIT Settlement — specifically, that CIT (or more specifically, its predecessor OneWest Bank)[73] sold its servicing rights to Defendant's mortgage to Ocwen before the settlement, as illustrated in Defendant's Exhibit 2.

Defendant's argument appears to be premised on his assumption that CIT — no longer the servicer of the Note — had no reason to settle Defendant's limitations defense for the benefit of Ocwen and U.S. Bank.  But instead of speculating about CIT's motivation, the court determines the effect of the CIT Settlement based on what it says.  The CIT Settlement expressly inures to CIT's successors and assigns.  Ocwen is a "successor" or "assign" to CIT with respect to the Note as those terms are commonly understood.  See SUCCESSOR, Black's Law Dictionary (12th ed. 2024) ("**1**. Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor."); ASSIGNEE, Black's Law

---

[73]Defendant also argues that Plaintiffs cannot be successors or assigns because CIT never serviced the loan and never had contractual privity with Plaintiffs.  But the evidence shows nothing more than the ordinary succession of corporate entities.  There is no dispute that OneWest merged with CIT Bank, N.A., with the merged entity keeping the latter's name.  The rights and obligations of OneWest became those of CIT Bank, N.A.  Defendant fails to explain why this evolution affects Plaintiffs' right to enforce the CIT Settlement.

Dictionary (12th ed. 2024) ("Someone to whom property rights or powers are transferred by another. . . . Also termed assign."). Ocwen (and its successor-by-merger PHH)[74] can therefore enforce the CIT Settlement against Defendant.

U.S. Bank is entitled to enforce the CIT Settlement because it expressly releases "any predecessors in interest," and the servicing rights were originally held by the mortgagee.[75]

### c.    Whether the Release Covers Limitations

"In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released." Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991). But a settlement agreement need not "anticipate and identify each potential cause of action relating to the release's subject matter." Keck, Mahin & Cate v. National Union Fire Insurance Co. of Pittsburgh, Pa., 20 S.W.3d 692, 698 (Tex. 2000). "As a defense to a civil action, the statute of limitations is a personal privilege and may be waived by agreement either before or after expiration of the prescribed time limit." American Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173, 177 (Tex. App.—Houston [14th Dist.] 1989). The foreclosure statute of limitations may be

---

[74]Trial Day 1 Transcript, Docket Entry No. 213, p. 17 lines 11-25, p. 18 lines 1-2; Agreement and Plan of Merger, Plaintiffs' Exhibit 24.

[75]In this case, the servicing rights originated either from U.S. Bank or its predecessor Home123.

waived after it expires. See Brown v. EMC Mortgage Corp., 326 S.W.3d 648, 653 (Tex. App.—Dallas 2010).[76]

The CIT Settlement releases all of Defendant's "claims" and "rights" "of any nature whatsoever" "related to or arising out of any and all claims which were brought or could have been brought[.]"[77] Defendant's limitations defense was a right related to a claim that he brought — his declaratory judgment claim. The CIT Settlement states that it is "complete and unconditional settlement, release, and compromise . . . regarding all of [Defendant]'s claims arising out of . . . the Lawsuit[.]"[78]

---

[76]The Texas Supreme Court has stated "[b]lanket pre-dispute waivers of all statutes of limitation are unenforceable, but waivers of a particular limitations period for a defined and reasonable amount of time may be enforced." Godoy v. Wells Fargo Bank, N.A., 575 S.W.3d 531, 538 (Tex. 2019). The Court was addressing a waiver entered as part of a loan — before the lender's cause of action accrued and therefore before any statute of limitations started to run. See id. at 533-34. It is not clear that the "defined and reasonable amount of time" requirement applies to waiver of an already-expired statute of limitations. See id. at 538 (quoting Titus v. Wells Fargo Bank & Union Trust Co., 134 F.2d 223, 224 (5th Cir. 1943)) ("'Waiver before the [limitations] bar has fallen must be specific and only for a reasonable time . . .'") (emphasis added). Even if it does, the "amount of time" waived by an after-the-fact waiver at least includes the past running of limitations. To the extent the Settlement Agreement purports to waive post-settlement running of limitations, Godoy may limit its enforceability as to that period. But because less than four years passed between the settlement and Plaintiffs' filing of this foreclosure action (and because Plaintiffs reset limitations by sending a new notice of default in 2019), it is immaterial whether the CIT Settlement can waive post-settlement running of limitations.

[77]CIT Settlement, Plaintiffs' Exhibit 31, pp. 2-3.

[78]Id. at 3.

Defendant argues that the Fifth Circuit's opinion in this case disposes of Plaintiffs' release argument. The Fifth Circuit, in analyzing whether res judicata barred Plaintiffs' limitations defense, stated that "Mr. Lamell's [state court] declaratory judgment 'claim' was not really a claim at all; it was an 'anticipatory defense to a potential claim.'"[79]

The quoted language from the Fifth Circuit, in context, meant that Defendant's declaratory judgment claim — not coupled with a request for coercive relief — was not a claim for purposes of the claim preclusion doctrine.[80] The definition of a claim for purposes of claim preclusion has little bearing on the scope of claims released by the CIT Settlement. Two aspects of the settlement evidence a broader release that covers Defendant's limitations defense. The settlement's recitals reveal that the parties considered requests for declaratory judgment to be "claims": "WHEREAS, Defendant herein agrees to settle with Plaintiff to resolve all <u>claims for declarations</u> and for damages . . . ."[81] Moreover, Defendant released not only "claims" but also "rights" related to his claims, which covers his limitations defense.[82]

---

[79]Opinion, Docket Entry No. 125, p. 11.

[80]<u>Id.</u>

[81]CIT Settlement, Plaintiffs' Exhibit 31, p. 2 (emphasis added).

[82]<u>Id.</u> at 3. If there were any doubt, the settlement's statement that it is meant to be "comprehensive in nature" confirms that the parties intended to finally resolve all of Defendant's claims. <u>See id.</u> at 6.

The CIT Settlement released Defendant's limitations defense to foreclosure.   The court will therefore enter declaratory judgment that the statute of limitations does not bar Plaintiffs from foreclosing.

**B.   Plaintiffs' Claim for Declaratory Judgment on Taxes**

In its March 24, 2021, Order Adopting Amended Memorandum and Recommendation, the court granted summary judgment to Plaintiffs on their claim for declaratory judgment on past due taxes.[83]   The Fifth Circuit mentioned this ruling but did not definitively state whether Defendant had appealed it and did not rule on it.[84]   To the extent that the court's summary judgment ruling on the issue was within the scope of the remand, the trial evidence confirms the court's prior ruling.   The Waiver of Escrow authorizes Plaintiffs to pay property taxes that Defendant fails to "timely" pay.[85] Defendant argued at trial that he timely paid or obtained deferral for all taxes.   But the court concludes that deferred property taxes are not timely paid.   Even if deferral prevents foreclosure on the government's tax lien, interest nevertheless accrues on the unpaid taxes, thereby increasing the size of the lien.   Tex. Tax Code § 33.06(d).   When the tax lien is ultimately satisfied, the

---

[83]Amended Memorandum and Recommendation, Docket Entry No. 86, pp. 24-25; Order Adopting Amended Memorandum and Recommendation, Docket Entry No. 99.

[84]See Opinion, Docket Entry No. 125, pp. 2, 15-16.

[85]Waiver of Escrow, Plaintiffs' Exhibit 3.

accrued interest will reduce the proceeds available to satisfy Plaintiffs' lien. <u>See</u> Tex. Tax Code § 32.05(b)(1) (making tax liens senior to creditors' liens). The court will therefore enter declaratory judgment that Plaintiffs are entitled to pay taxes on the Property and that Defendant is not entitled to deferral of taxes under the Note and Deed of Trust.[86]

## C.   Plaintiffs' Cause of Action for Foreclosure

The Deed of Trust provides U.S. Bank, as successor to Home123, with a security interest in the Property.[87] Because PHH is the mortgage servicer,[88] it may administer a foreclosure on U.S. Bank's behalf pursuant to Texas Property Code § 51.0025. Defendant has defaulted on the Note by failing to make monthly payments.[89] PHH sent Defendant a notice of default and intent to accelerate and a notice of acceleration as required by Texas law.[90] The court will therefore enter an order confirming that Plaintiffs may foreclose in accordance with the Deed of Trust and Texas Property Code § 51.002.

---

[86]The court does not hold that Defendant cannot apply for and receive a deferral under Texas law; the court merely addresses Defendant's contractual obligations under the Note and Deed of Trust.

[87]Joint Pretrial Order, Docket Entry No. 186, p. 4 ¶¶ 6.3, 6.7.

[88]<u>Id.</u> at 5 ¶ 6.19.

[89]<u>Id.</u> at 4 ¶ 6.11.

[90]<u>Id.</u> at 5 ¶ 6.21, p. 6 ¶ 6.22.

### D.    Plaintiffs' Claim for Contractual Subrogation

"Contractual subrogation arises when 'a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an agreement that such person shall stand in the place of the original holder of the indebtedness.'" <u>Vogel v. Veneman</u>, 276 F.3d 729, 735 (5th Cir. 2002). A valid deed of trust executed by both the borrower and lender establishes contractual subrogation. <u>Id.</u> Paragraph 9 of the Deed of Trust authorizes U.S. Bank to take certain actions to protect its security interest when Defendant breaches the Deed of Trust, including "paying any sums secured by a [senior] lien[.]"[91] Paragraph 9 states that these sums "become additional debt of Borrower secured by" the Deed of Trust.[92] Plaintiffs proved at trial that they advanced $92,582.06 in property taxes.[93] That amount is therefore debt secured by the Deed of Trust.[94]

---

[91]Deed of Trust, Plaintiffs' Exhibit 2, p. 7.

[92]<u>Id.</u> at 8.

[93]Total Escrow Breakdown, Plaintiffs' Exhibit 36, p. 4; Trial Day 1 Transcript, Docket Entry No. 213, p. 42 lines 14-17, p. 43 lines 6-7, 14-16.

[94]Among the contested propositions of law in the Joint Pretrial Order is "whether contractual [and equitable] subrogation bars the statute of limitations defense[.]" Docket Entry No. 186, p. 9 ¶¶ 4-5. As the Fifth Circuit stated on appeal, Plaintiffs' "subrogation claims accrued when their foreclosure claims accrued[.]" Opinion, Docket Entry No. 125, p. 15. "Thus, absent abandonment of acceleration, the statute of limitations for Appellees' subrogation claims ran at the same time as it ran for their foreclosure claim." <u>Id.</u> In other words, Plaintiffs'

(continued...)

### E.    Equitable Subrogation

In the alternative, Plaintiffs seek equitable subrogation for the advanced property taxes.  "Equitable subrogation 'is a legal fiction' whereby 'an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another.'" Murray v. Cadle Co., 257 S.W.3d 291, 299 (Tex. App.—Dallas 2008) (quoting First National Bank of Houston v. Ackerman, 70 Tex. 315, 319-20 (1888)).    "There are two key elements to equitable subrogation:  (1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily." Bank of America v. Babu, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011).    "Texas courts are 'liberal in their determinations that payments were made involuntarily.'" Frymire Engineering Co. ex rel. Liberty Mutual Insurance Co. v. Jomar International, Ltd., 259 S.W.3d 140, 145 (Tex. 2008).    "The doctrine of equitable subrogation allows a lender who pays the property taxes owed by a debtor to step into the shoes of the taxing authority and assume the tax lien attached to the secured property." Bank of New York Mellon v. Maniscalco, No. 1:15-CV-035,

---

[94](...continued)
contractual subrogation claim affects the amount secured by the Deed of Trust, but it does not affect limitations.  See also PNC Mortgage v. Howard, 668 S.W.3d 644, 650 (Tex. 2023) (rejecting the argument that subrogation gives a lender a separate foreclosure claim with an independent statute of limitations).

2016 WL 3584423, at *5 (E.D. Tex. Mar. 3, 2016) (applying Texas law).  Defendant, as owner of the Property, was primarily liable for his property taxes.  Because late taxes accrue interest and thereby increase the size of the senior tax lien, the court concludes that Plaintiffs' payment of the taxes was involuntary.

Because Plaintiffs are entitled to contractual subrogation, equitable subrogation is unnecessary and therefore unavailable. See LaSalle Bank National Association v. White, 246 S.W.3d 616, 619 (Tex. 2007) ("[E]quitable remedies apply only when there is no remedy at law[.]").  But to the extent contractual subrogation is later held to be unavailable, Plaintiffs would be entitled to equitable subrogation for the $92,582.06 in taxes.

**F.  Attorneys' Fees**

The Deed of Trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default" and that "Lender shall be entitled to collect all expenses incurred in pursuing [acceleration and foreclosure], including, but not limited to, reasonable attorneys' fees[.]"[95]  The parties stipulated at trial that Plaintiffs have incurred $174,492.19 of attorneys' fees to date.[96]  Defendant has not challenged the reasonableness of Plaintiffs' attorneys' fees, and the court concludes that the amount is reasonable in light of the length and complexity of this

---

[95]Deed of Trust, Plaintiffs' Exhibit 2, p. 10 ¶ 14, p. 13 ¶ 22.

[96]Trial Day 2 Transcript, Docket Entry No. 215, p. 69 lines 16-24.

action.   The amount secured by the Deed of Trust includes
$174,492.19 in attorneys' fees.

## G.   Defendant's Claims

Defendant's declaratory judgment claims and claim for release
of lien are based on his limitations defense.   Because Defendant
released his limitations defense, Defendant's claims fail.

## H.   Insurance Funds

One of the contested propositions of law in the Joint Pretrial
Order is "the distribution of funds from Dykema's IOLTA account[,]"
and the parties presented argument at trial regarding insurance
funds.   But aside from a declaratory judgment claim that the court
struck from Defendant's Live Answer, the pleadings do not contain
any claims regarding the insurance funds.   Although Defendant
acknowledged at trial that the funds "go with the property" and
that he does not have a claim to the funds "independent of the
property,"[97] any claim regarding the insurance funds depends on the
foreclosure sale price and will therefore ripen only after the
foreclosure sale occurs.[98]   Therefore, the court's Final Judgment
includes no disposition regarding the insurance funds.

---

[97]Trial Day 2 Transcript, Docket Entry No. 215, p. 55
lines 10-21.

[98]See Plaintiffs' Trial Brief, Docket Entry No. 185, p. 13.

### V.  **Conclusion and Order**

The court concludes that the Note was accelerated on June 4, 2010, that the statute of limitations was tolled for 755 days, that Plaintiffs and their predecessors did not foreclose or abandon acceleration within four years plus tolling, and therefore that the foreclosure statute of limitations expired.  The court concludes that Defendant released his limitations defense in the CIT Settlement and that Plaintiffs are entitled to enforce that release.  Therefore, the applicable statute of limitations (Tex. Civ. Prac. & Rem. Code § 16.035) does not bar Plaintiffs from foreclosing on the Property or collecting on the Note.

The court concludes that property taxes deferred under Tex. Tax Code § 33.06 are not "timely" paid within the meaning of the Waiver of Escrow and Deed of Trust, that Defendant failed to timely pay property taxes, and that the Waiver of Escrow authorizes Plaintiffs to pay the taxes.  Plaintiffs therefore have the right to pay taxes on the Property, and Defendant was not entitled to deferral of payment of his property taxes under the terms of the Note and Deed of Trust.

The court concludes that Plaintiffs have shown that they hold the Note and Deed of Trust, which allows them to conduct a non-judicial foreclosure in the event of default on the Note; that Defendant has failed to make the payments required under the Note,

-37-

which constitutes an event of default; that Plaintiffs have accelerated the Note and sent all notices required to do so; that Plaintiffs have standing to foreclose; and that Plaintiffs may therefore foreclose on the Property.  Plaintiffs may therefore foreclose on the Property in accordance with the Deed of Trust and Texas Property Code § 51.002.

The court concludes that the Deed of Trust has a contractual subrogation clause such that unpaid property taxes advanced by Plaintiffs are debt of Defendant and secured by the Deed of Trust. The court concludes that Plaintiffs have advanced $92,582.06 in unpaid property taxes.  Plaintiffs therefore have a valid claim for contractual subrogation in the amount of $92,582.06.

Because the court concludes that Defendant released his limitations defense, Defendant's claims for declaratory judgment and for a release of the Deed of Trust lien will be dismissed with prejudice.

The court concludes that the amount secured by the Deed of Trust includes the outstanding balance of the loan, $1,679,882.94 as of November 14, 2024 (including the advanced taxes),[99] pre-judgment and post-judgment interest at the Note interest rate

---

[99]Payoff Quote, Plaintiffs' Exhibit 57, pp. 1-2.

-38-

of 6.625% per annum,[100] $174,492.19 in attorneys' fees, and costs of court.[101]

**SIGNED** at Houston, Texas, on this 29th day of January, 2025.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[100]Post-judgment interest on a money judgment is set by 28 U.S.C. § 1961(a). But Defendant's requested relief does not include a money judgment but instead a declaratory judgment regarding the amount secured by Deed of Trust. That amount is dictated by the terms of the Note and Deed of Trust. The Note states that Defendant "will pay interest at a yearly rate of 6.625%. The interest rate . . . is the rate I will pay both before and after any default . . ." Note, Plaintiffs' Exhibit 1, p. 1. That interest is secured by the Deed of Trust. Plaintiffs' Exhibit 2, p. 4 ¶ 1.

[101]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with this case. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.